FREDERICK SHICKLE ET AL., Appellants, *v.* CHOUTEAU, HARRISON & VALLÉ IRON COMPANY, Respondent.

| 10a | 241 |
| 31a | 237 |
| 10 | 241 |
| 39 | 516 |
| 10 | 241 |
| 46 | 627 |

### April 19, 1881.

1. The words "more or less" in a contract will not cover an indefinite quantity, and will allow only a slight departure from the quantity expressed in the contract.

2. The words "more or less," added to a given quantity expressed in a contract, do not create such ambiguity in its terms as to render parol explanation admissible.

3. In interpreting any written instrument such meaning must be given it, if possible, as will give effect to all its parts.

4. Where a proposal for a contract is made, its acceptance coupled with a modification is, in law, a rejection, and it becomes, in its modified form, a new proposal.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Reversed and remanded.*

T. A. & H. M. POST, for the appellants: The effect of the words "more or less" used in a contract is to permit only a slight variation from the specific amount named. — *Cross* v. *Elgin*, 2 Barn. & Adol. 110; *Patterson* v. *Judd*, 27

Mo. 567 ; *Iron Co.* v. *Parsons*, 5 Gray, 591 ; *Cabot* v. *Winsor*, 1 Allen, 546 ; *Blaney* v. *Rice*, 2 Pick. 64, 550 ; *McConnell* v. *Murphy*, 21 U. S. 609.

CLINE, JAMISON & DAY, for the respondent : The writing was an imperfect instrument of contract on the part of the plaintiff, and does not import an obligation on their part as to the property to be delivered, with that degree of certainty that is necessary in order to exclude parol evidence in relation to it. — *Rollins* v. *Claybrook*, 22 Mo. 408. The written memorandum does not purport to be a complete expression of the entire contract, and parol evidence was correctly admitted to supply what was omitted. — *Moss* v. *Green*, 41 Mo. 389 ; *McDonald* v. *Longbottom*, 1 El. & El. 977 ; *Life Assn.* v. *Cravens*, 60 Mo. 388 ; *O'Neil* v. *Crain*, 67 Mo. 250 ; 1 Greenl. on Ev., sect. 284a, and cases cited.

THOMPSON, J., delivered the opinion of the court.

We had no doubt about this case upon the argument, but, as it involves a considerable amount and a question of some importance in the interpretation of contracts, we have looked carefully through the record and printed arguments to see if we could discover anything which would change our first impressions.

It is an action for a part of the purchase-money of a quantity of old iron sold by the plaintiffs to the defendant corporation. · The defence is a counter-claim, the effect of which is that the plaintiffs contracted to sell to the defendant a greater quantity of iron than the amount which they actually delivered to it, and that, the price of iron having risen, the defendant was damaged, in a sum named, by such refusal to deliver the quantity contracted for. The only contested question in the case relates to the validity of this counter-claim.

The evidence shows that there was a negotiation between Mr. Harrison on the part of the plaintiffs and Mr. Fusz on

the part of the defendant, which resulted in the plaintiffs sending to the defendant the following letter: —

"ST. LOUIS, July 23, 1879.

"*Messrs. Chouteau, Harrison & Vallé, City.*

"GENTS: — Your proposal for 400 tons, more or less, of wrought scrap, consisting of one, one-half, and three-eighth plate blacksmith scrap, and lot of gas-pipes from Southern Hotel, and other scrap as shown your Mr. Fusz, at $22.00 per net ton in our yard, is accepted. You can commence hauling same at your convenience. Very truly,

"$22.00. SHICKLE, HARRISON & CO."

The defendant thereupon commenced hauling and kept on hauling until it had taken away four hundred and thirty-five tons, when it was stopped by the plaintiffs.

The position of the defendant is, that there were in the yard of the plaintiffs about six hundred tons of iron of the kind described in this letter; that it was shown by Mr. Harrison, one of the plaintiffs, to Mr. Fusz, acting for the defendant; that it was thereupon agreed that the defendant should have all the iron in the yard at $22 per ton; and that this letter is simply a notice of acceptance of the antecedent agreement, which was the contract. The testimony given by Mr. Fusz for the defendant was that the agreement embraced all the iron in the yard, supposed at the time to amount to about four hundred tons, but which in fact amounted to about five hundred and fifty or six hundred tons. The testimony of Mr. Harrison, for the plaintiffs, directly contradicts this. He says that the offer which he made to Mr. Fusz was to sell the defendant a quantity pointed out, supposed to amount to about four hundred tons, at $22 per ton, the plaintiffs to retain the balance of what there was in the yard for their own use.

This case very strongly illustrates the wisdom of the rule which excludes parol evidence in the interpretation of contracts, the terms of which are clear. Two credible business men, both of them, no doubt, conscientious and sincere,

have so far misunderstood each other as to the terms of a bargain, as to contradict each other upon oath in respect to an important fact involving a large amount of money. Fortunately, the case does not present the extremity of requiring a jury to resolve the doubt which must necessarily arise between the credibility of two such witnesses, in order to settle the rights of the parties. The contract was evidenced by the letter above set forth. There was no such ambiguity as to the quantity of the iron embraced in this letter as called for parol explanation ; although parol explanation might have been admissible as to the particular piles or descriptions of iron which were shown to Mr. Fusz, and which were intended to be embraced in it. *Cabot* v. *Winsor*, 1 Allen, 546. This conclusion we regard as very clear upon principle, and in arriving at it we are aided by several analogous cases. The words " more or less " in a written contract are never understood to permit more than a small departure from the quantity named in the contract. " It is always understood in these cases," says Littledale, J., in *Cross* v. *Eglin*, 2 Barn. & Adol. 106, 110, referring to the meaning of these words in a contract, " that the excess bears a very small proportion to the amounts named." " In sales of merchandise," says Bigelow, C. J., in *Cabot* v. *Winsor*, 1 Allen, 546, 550, " especially large quantities, the words ' more or less ' are inserted in order to cover any variation from the estimate which is likely to arise from the difference in weight, errors in counting, diminution by shrinking, or other similar causes. But in such cases parol evidence is not admitted to show that the parties intended to buy and sell a different quantity or amount from that stated in the written agreement. On the contrary, it is held to be a contract for the quantity or amount specified, and the effect of the words ' more or less ' is only to permit the vendor to fulfil his contract by a delivery of so much as may reasonably and fairly be held to be a compliance with the contract after making due allowance for excess or short

delivery, arising from the usual and ordinary causes which prevent an accurate estimate of the weight or number of articles sold.   Or, as it is sometimes briefly expressed, it is an absolute contract for a specific quantity within a reasonable limit.   What is a reasonable limit and a substantial compliance with such contract, if the facts are not in dispute between the parties, is a question for the determination of the court."   "These words," said Scott, J., referring to the same subject, "would ordinarily cover a small excess or deficiency proportioned to the amount named, so that the parties would not be subjected to the inconvenience of a small excess in complying or a small deficiency in not complying with a contract, by leaving the excess in the hands of the vendor, in the one event, or refusing to take the amount offered by reason of the deficiency, in the other. The term ' more ' would not compel a party to take an indefinite quantity, nor would the term ' less ' force him to take a quantity bearing no proportion to that stipulated." *Patterson* v. *Judd*, 27 Mo. 263, 267.

Such being the meaning affixed by law to the words " more or less " in a written contract, the use of such words does not create such an ambiguity in the contract as will let in parol explanation.   The court, therefore, erred in permitting the witness Fusz, against the objection of the plaintiffs, to testify as to what the quantity was which the parties intended to be embraced in the contract.   On the contrary, the words " 400 tons " in the contract are to be taken, not as mere words of expectation, but as words of contract, limiting and defining the quantity to be sold. *Morris* v. *Levison*, 1 C. P. Div. 155 ; *Leeming* v. *Snaith*, 16 Q. B. 275.   The construction put upon the contract by the defendant has the effect of erasing from the contract the words " 400 tons."   This cannot be done.   It is well settled, in interpreting any written instrument, that such·a meaning shall be put upon it as will, if possible, give effect to all its parts.

The view advanced by the defendant, that the antecedent parol proposition from the plaintiffs, as to which Mr. Fusz testified, was a part of the contract, is clearly unsound. ·If there had been such a previous proposal, and if it had been embodied in writing, their position would still be unsound : for it is a well-settled rule, in determining what constitutes a contract, that where a proposal is made by one party, and accepted by the other party with a modification or limitation, such acceptance is, in law, a rejection of the proposal. If it stands at all, it can only stand as a new proposal. Benj. on Sales, sect. 39 ; *Hyde* v. *Wrench*, 3 Beav. 334 ; *Hutchison* v. *Bowker*, 5 Mee. & W. 535 ; *Jordan* v. *Norton*, 4 Mee. & W. 155. That was this case. The letter above set out was, in law, a rejection of any previous offer which the defendant may have made to ·purchase all the iron in the yard, and a withdrawal of any previous offer which the plaintiffs may have made, if any such was made, to sell the defendant all the iron in the yard.

If we are right in the foregoing views, the defendant's counter-claim had nothing to rest upon. The court, therefore, erred in admitting parol testimony as to the amount of iron intended to be embraced in the contract, and in refusing to instruct the jury that the defendant was not entitled to recover on its counter-claim. For this reason we reverse the judgment and remand the cause. Judge BAKEWELL concurs ; Judge LEWIS did not sit.