(June 3, 1902.)

## MARTIN v. DOWD.
### [69 Pac. 276.]

ISSUES—CONTRACTS.—Where the issues made by the pleadings are matters of fact, whether the contract was a loan or a sale, the cause was properly submitted to a jury.

CONFLICT OF EVIDENCE—VERDICT OF JURY.—Where there is a substantial conflict in the evidence, a judgment entered on the verdict of a jury will not be reversed.

(Syllabus by the court.)

APPEAL from the District Court, Nez Perces County.

Charles L. McDonald, for Appellants.

The instrument by which said conveyance was made was set out in full by the defendants in their answer, which showed said instrument to be a deed from the plaintiff to defendants for said property, absolute on its face, and as plaintiff failed to file the affidavit denying the execution of said instrument as provided for in section 4201, Revised Statutes of Idaho, he admitted the genuineness and due execution of the said instrument he is precluded further from showing anything contrary to the facts contained in said instrument except that

the same was procured through fraud or misrepresentation. (*Cox v. Northwestern Stage Co.,* 1 Idaho, 376.) "A parol agreement by the grantee of an absolute conveyance to dispose of the property and return the proceeds to the grantor after the payment of the grantee's debts creates an express trust." (*Benson v. Dempster,* 183 Ill. 297, 55 N. E. 651; Fetter on Equity, 164; Bisham's Equity, sec. 49.) "The nature of the cause of action must be determined from the substantive facts therein pleaded, and not from the prayer for relief nor from the name given to the action by the pleader." (*Martin v. Martin* 18 Ind. 227, 20 N. E. 767.) Showing, as we deem we have, that the case at bar is an equitable action and should have been tried by the court and without a jury unless the jury acted in an advisory manner merely. (Hayne on New Trial and Appeal, sec. 287; *Hulley v. Chedic,* 22 Nev. 127, 58 Am. St. Rep. 729; *Ramsey v. Hart,* I Idaho, 423, 36 Pac. 783; *Sullivan v. Royer,* 72 Cal. 248, 13 Pac. 655.) "The presumption of law, independent of proof, is that the instrument is what on its face it purports to be—an absolute conveyance—and that this presumption should be allowed to prevail unless the evidence offered to show that the deed was in fact intended as a mortgage, is entirely plain and convincing." (*Mahoney v. Bostwick,* 96 Cal. 53, 31 Am. St. Rep. 175, 30 Pac. 1020; *Heley v. Hotaling* 41 Cal. 22; *Cadman v. Peter,* 118 U. S. 73, 6 Sup. Ct. Rep. 957; *Coyle v. Davis,* 116 U. S. 108, 6 Sup. Ct. Rep. 314; *Whitsett v. Kershow,* 4 Colo. 419; 3 Pomeroy's Equity Jurisprudence, sec. 1196; *Sheehan v. Sullivan,* 126 Cal. 189, 58 Pac. 543.) "Where there is no substantial conflict in the evidence, and it is clearly against the verdict, the judgment will be reversed." (*Idaho Mercantile Co. v. Kalanquin,* 7 Idaho, 295, 66 Pac. 933.)

Daniel Needham, for Respondent.

Appellant contends that they were to pay to respondent the sum of $500 as full consideration for the deed, and respondent contends that appellants must pay him $750, as they sold the mine for $3,000. Here is a dispute about the consideration of the deed. The deed recites that $500 was the consideration,

and the respondent and the jury say that $750 was the true consideration. The statement of the deed as to the consideration is in the nature of a recital, and the true consideration may be shown by oral testimony. In the case of *Benson v. Dempster,* 183 Ill. 297, 55 N. E. 651, cited by appellants, there was an agreement to accept an absolute deed and to pay from the proceeds of the sale of the real estate the grantor's debts, and thereafter to pay balance remaining to grantor. This is the creation of a trust. But that case is not in point. Here the appellants agree to pay to respondent for his interest in the mine one-fourth of the amount they sell the entire mine for. The substantive facts stated in the complaint, therefore, show conclusively that the action is at the common law.

STOCKSLAGER, J.—This is an appeal from a judgment of the district court of Nez Perces county; also from an order overruling a motion for a new trial. The complaint alleges that on the twentieth day of May, 1897, plaintiff, defendants, and one Gust Erickson located a certain mining claim in the name of D. W. Martin, Gust Erickson, Matt Dowd, and John Gaffney; that thereafter, to wit, in the month of October, 1900, plaintiff borrowed from defendant Matt Dowd $100, and agreed to, and did, convey one-fourth interest in said mining claim to said Matt Dowd and John Gaffney for the purpose of securing said loan of $100, and for the further purpose that they, the said Dowd and Gaffney, might negotiate a sale of said mining claim, and on the sale thereof retain said $100 and all interest thereon, and pay to this plaintiff one-fourth of any and all purchase money that they might receive from said sale; that on the fifth day of March, 1900, said Dowd and Gaffney negotiated a sale of said mining claim with one George Runkle, and that said Dowd and Gaffney, together with Gust Erickson, for the sum of $3,000, of which $500 was paid on the said fifth day of March, 1900, and the balance, of $2,500, was paid in the month of April, 1900, sold, assigned, transferred, set over, and deeded to the said Runkle the said mining claim, together with all right, title, interest, and estate of each and every of said locators and of plaintiff in and to the same; that

said Dowd and Gaffney have paid to said Erickson his one-fourth, to wit, $750; that they have paid plaintiff about March 5, 1900, $500, and have neglected and refused to pay plaintiff the balance due him, to wit, $250, though often requested so to do. The answer admits the location of the mining claim by the parties as alleged in the complaint, and all the allegations of the complaint except such as are denied, to wit: Deny that they paid to the plaintiff on or about the fifth day of March, 1900, $500, or any other sum greater than the sum of $400. Deny that they have neglected or refused to pay to plaintiff the balance due him, to wit, $250, or any other sum, or that any balance is due him. Affirmatively allege: That on the ninth day of October, 1899, plaintiff prepared and offered for sale to defendants his undivided one-fourth interest in and to said mining claim for the sum of $500, payments to be made as follows: $100 cash at the time of transfer of property, and balance, $400, to be paid whenever demanded by plaintiff. To this proposition defendants acceded, whereupon plaintiff made, executed, and delivered to them his deed to his undivided interest in and to the said property, defendants at said time paying to him the sum of $100, as agreed, as a part of the purchase price of said property. That thereafter, to wit, on or about the sixth day of March, defendants placed to the credit of plaintiff, in the First National Bank of Lewiston, the further sum of $400, as balance due on said purchase price, which said amount plaintiff received and accepted as the total amount due him for said interest as aforesaid. That ever since said time, and until the time of the transfer of the whole of said mining claim, defendants were the owners in fee of said interest formerly owned by plaintiff. Upon these issues a jury was impaneled, and a trial had, which resulted in a verdict for the plaintiff for the sum of $224, and upon which a judgment was entered in favor of the plaintiff for said sum.

The first assignment of error is as follows: "The court erred in ordering a jury to be sworn and impaneled, over defendants' objection, to try the above cause, and in having the same tried by a jury." In support of this assignment of error our attention is called to *Cox v. Northwestern Stage Co.*, 1 Idaho,

376. The syllabus says: "A failure by plainiff to deny by affidavit the genuineness and due execution of an instrument in writing set forth in the answer as the foundation of the defense does not preclude the plaintiff from showing on the trial that it was procured by fraud or misrepresentation." There is no controversy about the character of the instrument. It is alleged by plaintiff that he executed the deed to his interest in the mining claim to defendant as security for a loan, whilst defendants allege that the deed was intended to absolutely convey the property. The only question being one of fact, it was properly referred to a jury.

The second assignment follows: "The court erred in ruling, over defendants' objection, that this case is a proper case for a jury, and that it should be tried by a jury." The same ruling applies to this assignment, and we do not think it was error to submit the issues to a jury.

Assignment 3: "The court erred in overruling defendants' objection to the following question asked witness Martin: 'You heard me read the complaint wherein you allege you made a deed in October, 1899? State what passed between you and the defendants, Matt Dowd and John Gaffney, if anything, when you made the deed.'" Counsel for appellants objected, to wit: "We desire to object to that question on the ground that it is incompetent, immaterial, and irrelevant; that the plaintiff is attempting to vary the terms of a written contract or agreement by parol evidence, which in this character of a case is inadmissible. On the further ground that the plaintiff, by failing to comply with section 4201 of the Revised Statutes of Idaho, which requires the filing of an affidavit where a written instrument is set up—by failing to do this he has admitted the execution of the deed, and that by that admission he not only admitted the execution and correctness of it, but admits the facts and things therein stated as true." We find no error in overruling the objection to this question. It only called for a statement of what took place between the parties at the time of the execution and delivery of the deed.

The fourth assignment of error, to wit: "The court erred in overruling and denying defendants' motion for nonsuit and dis-

missal of said action, which was made at the close of plaintiff's testimony." The rule is well settled that, where there is any competent evidence to support plaintiff's claim, the court should not sustain a motion for nonsuit. The record discloses that there was evidence in the case to support plaintiff's claim, and we think the motion was properly overruled.

- This brings us to the only remaining question in the case— the sufficiency of the evidence to support the verdict and judgment of the court. Plaintiff testified that he borrowed $100 from defendant Dowd, and executed his deed to Dowd and Gaffney as security for the payment of such loan, and to enable them to dispose of the entire property in case they had an opportunity to do so. He insists that he did not at that time or at any time sell the property to defendants, but that the contract and agreement was that he was to have his one-fourth of the purchase price of the mine in case it was sold. He testifies he never read the consideration expressed in the deed, and did not know what amount was expressed therein as a consideration. The defendants each testify positively that the sale was an absolute, bona fide sale of plaintiff's one-fourth interest in the mining claim to them, and that the $500 expressed in the deed was the actual consideration for such interest; that they deposited the $400 in a bank at Lewiston for plaintiff, which, with the first payment of $100, was in full payment for said property. H. K. Barnett, the notary public before whom the deed was acknowledged, testified on behalf of defendants that: "I remember these parties being in my office and having this deed acknowledged. I read to Mr. Martin the description of the land and the amount of the consideration, and asked him, in the usual way, if he knew the contents of the instrument. Upon my asking him this question, he said, 'Yes,' of course, like any other party." Charles Dowd, a brother of Matt, the defendant, testified that he remembered a conversation on the Dowd farm in the month of October, 1899, in which himself, Matt Dowd, W. A. Fabrick, and plaintiff, Martin, were present. The lines of a mining claim were being discussed. Matt Dowd made the remark to Martin, "Our lines run so and so (designating the lines), do they not?" Mr.

Martin says, "Our lines? I have nothing more to do with it. It is you and Gaffney for that." Witness said to Martin, "So you have no mine now," and Martin says, "No; I did have a mine, or an interest in one, but I have sold it out to the boys." W. A. Fabrick testifies to the conversation in practically the same language as the last witness. Harry Dowd testified that he met Mr. Martin (plaintiff) on the Lapwai road between the 10th and 20th of October, 1899—both being on horseback—when he had a conversation with plaintiff, to wit: "I asked him, 'How is your mining property?' He answered, 'I have sold out to the boys—to Matt and John.' I said, 'Did you make a good deal, Martin?' and he said, 'Yes; I sold out for $500. I got $100 down, and will get the balance after awhile.' I said, 'You are safe if the mine is worthless; you are sure of your money'; and Martin said, 'Yes.'" A receipt was introduced by the defendants, to wit: "$100. Lewiston, Idaho, Oct. 9th, 189—. Received from Matt Dowd and John Gaffney $100 in part payment for the John Day mine. D. W. Martin." Frank Peters testified: "Know plaintiff and defendant Dowd. Heard a conversation between them in reference to this deed. It was near the Raymond House. They were sitting down. Mr. Martin says, 'You know, Matt, it is no trade. It was no trade.' Mr. Dowd says, 'I know it was not,' and then said, 'The only way for you to get your money is to go and see a lawyer,' and he mentioned that two or three times. Martin said, 'That is what I am going to do.' They were talking about this mine at the time." Defendant Dowd denies this conversation, and plaintiff Martin denies the conversation testified to by Charles Dowd, Harry Dowd, and W. A. Fabrick. Plaintiff testified that defendant Dowd paid him $26 in addition to the $100, and that it was not for helping to drive cattle to Lewiston. Dowd explains by saying that: "When we bought the property from Martin, I told him to come to Lewiston, and I hired him to help me from Weippe to Lewiston with a band of cattle. He was on the road three or four days with two horses, and I had to pay him for the work. When he came to Lewiston he bought a saddle, and I paid for the saddle for owing him for the work—helping me down with

the cattle. Did not pay him, or mention anything about owing him, anything on the mining property." Upon this evidence the jury found for the plaintiff, as indicated by their verdict. The rule that where there is a substantial conflict in the evidence the verdict of a jury will not be disturbed is too well settled to require comment or citation of authorities. There is certainly a conflict here, and, to our minds, a very serious one. Whilst to us the preponderance of the evidence seems to largely predominate in favor of the defendants, yet the jury, who had the opportunity to determine who was mistaken or who was telling the truth, passed upon this question by a unanimous verdict. The learned judge in whose court this case was tried refused to set the verdict aside. He, too, had an opportunity of weighing the evidence as it came from the witnesses, and determining whether the verdict was the result of bias, prejudice, or any misconduct on the part of the jury. The district courts are created and empowered to try cases; this court, only to review them from the record presented.

There being a substantial conflict in the evidence, the verdict must be sustained. Costs are awarded to respondent.

Sullivan, J., concurs.

QUARLES, C. J., Dissenting.—I agree with my associates that the trial court did not err in calling a jury to try this action, which was brought to recover upon an alleged promise to pay a certain sum of money. The allegation in the complaint to the effect that the deed from the plaintiff to the defendants was intended to secure a loan was matter of inducement, explaining the true nature of the plaintiff's claim. I also agree that when there is a substantial conflict in the evidence the verdict of the jury should not be disturbed. But I am unable to agree to the conclusion in this case, for the reason that, in my opinion, the evidence was not conflicting to the extent that will bring this case within the rule, or, in other words, there is no real, substantial conflict in the evidence. No witness testified to any of the facts necessary to be established on behalf of the plaintiff, except the plaintiff; and the plaintiff is thoroughly impeached, not only by the testimony of the

defendants, but by the testimony of three witnesses who were not interested in the subject matter of the action, and by documentary evidence also. The plaintiff verified his complaint. It is stated in the complaint that "in the month of October, A. D. 1900, the plaintiff, D. W. Martin, borrowed from the defendant Matt Dowd the sum of one hundred ($100) dollars, and at the same time agreed that he would and did convey one-fourth interest in said John Day mining claim to the said Matt Dowd and John Caffney for the purpose of securing said loan of $100, and for the further purpose that they, the said Matt Dowd and John Caffney, might negotiate a sale of said mining claim, and on the sale thereof retain said sum of $100 and all interest thereon, and pay to this plaintiff one-fourth of any and all purchase money that they might receive from said sale." In his evidence the said plaintiff denied that said deed was made to secure a loan. The plaintiff testified that he did not understand the contents of the deed when he signed and acknowledged it, while the notary who took his acknowledgment to the said deed (H. K. Barnett) testified that he read the portion of the deed which related to the consideration and the description to the plaintiff, and asked him if he understood the deed, before taking the acknowledgment, to which the plaintiff replied that he did. The witness Barnett is corroborated by the defendant Gaffney, who testified that he was present when the deed was acknowledged, and that "Mr. Barnett read all parts of the deed relating to the description and amount of the consideration to Mr. Martin before he signed it. Mr. Martin was asked if he understood the deed, and if he signed the same voluntarily, and he said that he did." It was testified to by the defendant Matt Dowd, Charles Dowd, and W. A. Fabrick that at the Dowd farm, in Tammany Hollow, in the month of October, 1899, the plaintiff stated in a conversation with said Matt Dowd, in the presence of Charles Dowd and W. A. Fabrick, that he had sold his interest in said mine to the defendants. The plaintiff did not deny having such conversation, but testified that he did not remember it. Such conversation was testified to by said Matt Dowd, Charles Dowd, and W. A. Fabrick, neither one of whom

was contradicted or in any manner impeached. Harry Dowd also testified that he met the plaintiff in October, 1899, near Lapwai, and that plaintiff there and then told him that he (plaintiff) had sold his interest in said mine to Matt Dowd and John Gaffney for $500; that he got $100 down, and would get the balance after awhile. Plaintiff denied this conversation. The defendants offered in evidence the following receipt, which was received, to wit: "Lewiston, Idaho, October 9th, 189—. $100.00. Received from Matt Dowd and John Gaffney one hundred dollars in part payment for the John Day mine. D. W. Martin." Thus, it was shown by four witnesses and by the written receipt signed by the plaintiff that he had himself, before the action was commenced, when he had no incentive to tell anything except the truth, declared that he had sold the mine to the defendants, and that he sold it for $500. He was impeached upon material points by H. K. Barnett, by both of the defendants, by Charles Dowd, by W. A. Fabrick, and by Harry Dowd, and by the receipt signed by him. By his own statements made out of court the sale and the purchase price are established as claimed by the defendants. Now, against the statements of the two defendants establishing the transaction between the parties; against the testimony of three witnesses not interested in the transaction, to the effect that plaintiff stated before the suit was commenced that he had sold his interest in the mine to the defendants, and had no further interest in it; that he had sold for the sum of $500, and had received the sum of $100, and would get the balance later; in the face of the written receipt showing that $100 had been paid him on the purchase price—there is no contradictory evidence in the record, except the evidence of the plaintiff himself, who testified that the transaction and contract was that the defendants were to take the deed, and sell the property and give him one-fourth of the proceeds of the sale, without commission or pay for their trouble, and had loaned him $100. He only owned a fourth interest in the property. Neither the defendants nor their witnesses were impeached, and I cannot see how, under such circumstances, there was a substantial conflict in the evidence. Is a jury to find a verdict arbitrarily in

behalf of a plaintiff who is so thoroughly impeached, and no effort is made to bolster up the evidence of such plaintiff, and the verdict to be permitted to stand? If so, the rights of the citizen who may be unfortunate enough to be unpopular, although honest, are not very safe. It was the unquestionable duty of the trial court to set aside the verdict in this case, as it was against law and contrary to the evidence.