## S. B. Geiger, Appellee, v. Charles Kaestner and Frank Hecht, Appellants.

### Gen. No. 14,532.

CONTRACTS—*phrase "more or less" construed.* The phrase "more or less" following a numeral conveys the meaning of an estimate of probable distance or amount. The idea of nearness is suggested but that of fixedness is excluded, and where the question at issue in the controversy is one of distance, it is a question of fact for the jury to determine as to what is a reasonable limit in connection with the subject-matter and surrounding facts and circumstances of the particular case.

BAKER, J., dissenting.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed June 4, 1909. Rehearing denied June 15, 1909.

**Statement by the Court.** Plaintiff below, S. B. Geiger, who is appellee here, brought an action of *assumpsit,* upon a written contract, against Charles Kaestner and Frank Hecht, copartners, as Charles Kaestner & Co., and, upon a jury trial, recovered a judgment against them for $675.93. They are now prosecuting this appeal to reverse that judgment.

The action was brought upon the following written agreement:

"CHICAGO, ILL., Feb. 19, 1901.
MR. CHARLES KAESTNER,
    241-249 S. Jefferson St., Chicago.
DEAR SIR:
Replying to your request for well to be bored or sunk at such place as you may designate, the same to consist of the following: A well 7″ in diameter down to rock, and 6″ in diameter in rock to depth of 150′ from the surface, the remaining depth to be 5″ in diameter down to 300′ more or less from the surface, price $2.25 per lineal foot.
All steam required for operating my machinery for drilling the well herein specified is to be furnished me

free of charge when required. It is also understood that if the said well yields water that is not free from dirt and sand and same cannot be made to yield clear water, I am to forfeit said well, and all work appertaining to same, and to receive no compensation for the said work. I also guarantee that the water from the said well can be used for boiler purposes.

The above well will be cased with 7″ wrought iron pipe to rock, and same properly capped with a 7″ steel shoe of proper construction, and imbedded in rock. I am to stop work when at any time the well yields 40 gallons of water per minute, and payment is to be made only for the actual number of feet bored, at the rate specified above.

Payment: The above well is to be paid for within 6 months after completion, provided it is as agreed to be in this contract.

Soliciting your valued order which will receive my prompt and best attention, I remain

Yours very truly,

S. B. Geiger.

Accepted: Chas. Kaestner & Co.,
  Mch. 7, 1901.''

The plaintiff proceeded, under the contract, to bore the well. When a depth of 300 feet and 5 inches had been reached the work was stopped, and there is a controversy whether the defendants stopped it or whether plaintiff stopped voluntarily. According to the plaintiff's evidence he, plaintiff, being then sent for, went to see defendant Hecht. In reply to a question by Hecht plaintiff stated that the well then produced from five to ten gallons of water per minute. Hecht then said: ''I want you to stop. I do not want you to go on a damned foot farther, or I will turn the steam off.'' Whereupon plaintiff stopped his work of boring the well and, a day or two thereafter, measured the depth that had been bored. A witness, Jacob Ecker, apparently entirely disinterested, corroborated the plaintiff. This witness testifies: ''He wanted to go farther and Mr. Hecht told him he did not want to go any farther; he would not pay him; and if he made an at-

tempt to go any farther he would stop him, or something to that effect." "He said something about steam—that he would not give him any power." But, on the other hand, according to Mr. Hecht's testimony, plaintiff, at that same point of time, came to see him, Hecht, and stated that he, plaintiff, was then obtaining five, six or seven gallons per minute and that "He could not get any [more] without going deeper, and he could not go deeper unless he got extra pay, there was no chance of making that hole produce 40 gallons a minute." Hecht also testified that there was nothing said about shutting off the steam.

MAYER, MEYER & AUSTRIAN, for appellants.

AYERS & AYERS, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

No instruction was given. The defendants tendered six instructions which were all, in our opinion, properly refused.

There was a square conflict of fact, in the evidence, whether defendants stopped plaintiff from proceeding with the boring, when he had bored to a depth of three hundred feet and five inches. The jury determined that conflict in favor of plaintiff. The only question remaining is one of law, namely: Under the contract, properly construed, was plaintiff obliged to stop at 300 feet? The construction of contracts is always a question of law for the court. If, according to his contract, plaintiff was obliged to stop at a depth of 300 feet, the judgment of the trial court is erroneous. The contract provides that plaintiff shall bore a well six inches in diameter down to a depth of 150 feet from the surface and "the remaining depth to be 5″ in diameter down to 300′ more or less from the surface."

The question is: What is the legal effect of the language "down to 300′ more or less, from the surface?" When the parties entered into this contract

they did not know at what particular point of depth water, in the required quantity or quality, would be found. "But in such cases parol evidence is not admitted to show that the parties intended to buy and sell a different quantity or amount from that stated in the written agreement." Cabot v. Winsor, quoted in Shickle v. Chouteau, 10 Mo. App. 241, 245. To admit, in such case, parol evidence regarding what the parties intended would be to add to or vary a written agreement by parol evidence. The authorities seem to be uniform in holding that when the phrase "more or less" follows a figure the idea conveyed is one of estimate of probable distance or amount. The idea of nearness is conveyed, but the idea of fixedness or definiteness is excluded. And, in each instance, it is a question of fact what is a reasonable limit in connection with the subject-matter and surrounding facts and circumstances of the particular instance, which question of fact is, of course, for the jury. Schickle v. Chouteau, 10 Mo. App. 241; Cabot v. Winsor, 83 Mass. (1 Allen), 546, 550; Holland v. Rea, 48 Mich. 218; Chicago v. Galpin, 183 Ill. 399, 408; Harrison v. Talbot, 32 Ky. (2 Dana) 258; Kelly v. Bowker, 77 Mass. (11 Gray) 428. Hence, the proper question of fact to be passed upon by the jury in the present case—the only question of fact properly controvertible—was, whether plaintiff, assuming he was stopped, had bored so much beyond the 300 feet as to have reached what, in this instance, was the reasonable limit allowed by the expression "more or less," used by the parties in their contract.

We are not inclined to say that, in this instance, five inches, the extent to which plaintiff had exceeded the specified figure of 300 feet when he was stopped by the defendants from proceeding any deeper, is the full extent of the reasonable excess the words "more or less" allowed him. Five inches, beyond 300 feet, was regarded by the jury as short of the reasonable excess the contract allowed to the plaintiff. Had he

been allowed to proceed a few inches or a few feet farther he may or may not have struck water. But plaintiff's performance of his contract, and his right to compensation thereunder, depended upon his striking a specified quantity and quality of water and defendants should not have stopped him at a point short of the depth the contract between the parties contemplated, under the law. The law fixes the rights of parties in case of prevention of performance and plaintiff was entitled to recover under the common counts.

We call attention here to what seems to have escaped notice, that is, what was said in Monroe Cattle Company v. Becker, 147 U. S. 47: "It is loose and insufficient pleading to implead a party by initials. The full Christian name is essential."

The judgment of the court below must be affirmed.

*Affirmed.*

Mr. Justice BAKER dissenting.