THE SANTA PAULA COMMERCIAL COMPANY, *Appellant*, v. THE PARKHURST-DAVIS MERCANTILE COMPANY, *Appellee.*

No. 17,404.

SYLLABUS BY THE COURT.

VENDOR AND PURCHASER—*Contract—Default of Buyer—Significance of the Word "About."* In an action to recover damages for failure to accept a shipment of English walnuts the testimony on behalf of the plaintiff showed such circumstances and conduct as to afford some basis for finding or inferring that there had been a substantial compliance with a contract calling for "250 sacks of about 100 pounds each." *Held*, (1) that a demurrer to the plaintiff's evidence was improperly sustained; (2) that the question of substantial compliance should have gone to the jury under proper instructions as to the meaning and application of the quoted phrase.

Appeal from Shawnee district court. Opinion filed January 6, 1912. Reversed.

Commercial Co. v. Mercantile Co.

*Gleed, Hunt, Palmer & Gleed,* for the appellant.

*Clad Hamilton, Clay Hamilton,* and *Lee Monroe,* for· the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover damages for refusal to accept a carload of English walnuts. A broker called up the president of the defendant com-· pany and quoted prices, and was asked the weight of a minimum car. He replied: "It is 24,000 pounds, I think"; to which the president responded: "All right; I will take a minimum car." The broker mailed a written contract for execution, stating in the letter of transmittal that as the contract was drawn they were obliged to specify the exact number of sacks, but that in transmitting the order the shippers had been told not to hold the car to be exact, but to come as near the contract quantity as possible. A written contract was duly executed, and called for 250 sacks of about 100 pounds· each. The correct number, 250 sacks, were shipped, but the aggregate weight was upwards of 28,000 pounds; and the defendant wrote the brokers that "when this order was given you we asked the· minimum weight, which you advised was 24,000 lbs., and we stated to you we would take minimum car. We will refuse this car unless relieved of the surplus." It was then proposed to reduce the· draft, which had been drawn against the shipment, enough to bring it to the· proper amount for 24,000 pounds. It was suggested that the defendant thus receive the car and set aside for the plaintiff the surplus nuts out of the kind composing the greater part of the shipment. The bank was instructed to reduce the draft, and the instruction was enclosed to the defendant. Finally, after considerable discussion and delay, covering a number of days, the car was refused. The court sustained a demurrer to the plaintiff's evidence, and this is assigned as error.

It is contended by the defendant that a shipment of

over 28,000 pounds of nuts was so wide a departure from the amount ordered—24,000 pounds—that the court correctly held, as a matter of law, that no obligation rested on the defendant to accept. . The plaintiff urges that the matter of substantial compliance with the order was for the jury, and that there was evidence requiring submission of the question to them. The testimony showed that the order was given in the summer, when it was impossible to tell the character of the nut crop of the coming autumn; that the sacks used in the shipment were of uniform size, known as 100-pound sacks, the same in dimensions as had been used for many years by the shipper; that the weight of a sackful varied with the quality and meat of the nuts, and was on an average, one year with another, about 105 pounds, but that owing to the way the nuts of that year—1907—filled, such a sackful weighed about 113 pounds. Another matter requires notice. The order actually given was embraced in the written contract, which did not call for a minimum car or for about 24,000 pounds, but called for 250 sacks of about 100 pounds each. Hence, to consider it as an order for 24,000 pounds necessitates counting each sack 96 pounds; if exactly 100 pounds each, then 250 sacks would amount to 25,000 pounds. If the average weight, 105 pounds, be considered the criterion, then the order called for 26,250 pounds.

When, instead of 25,000 or 26,250 pounds, a car containing over 28,000 pounds came, and the offer was made to relieve the defendant of the surplus by reducing the draft, the broker testified:

"Q. Can you state what he said in reply to that? A. No, though it met with his acquiescence."

"Q. That is you can not give his exact words? A. No."

While numerous authorities are cited holding that when the facts are undisputed the question whether an order for "about" a certain amount of a given com-

Commercial Co. v. Mercantile Co.

modity has been complied with is for the court, reason not only dictates, but the rule supported by judicial decision requires, that when a transaction is surrounded with circumstances and conditions and affected by conduct from which opposing contentions arise, and different conclusions may fairly be drawn, the question of substantial compliance is one for the jury, under proper instructions. The degree of latitude and departure made permissible by the use of "about" can not be determined by any fixed rule, but must be decided according to the facts and circumstances of each case.

"The authorities seem to be uniform in holding that when the phrase 'more or less' follows a figure, the idea conveyed is one of estimate of probable distance or amount. The idea of nearness is conveyed, but the idea of fixedness or definiteness is excluded. And in each instance it is a question of fact what is a reasonable limit in connection with the subject-matter and surrounding facts and circumstances of the particular instance, which question of fact is of course for the jury." (*Geiger v. Kaestner and Hecht,* 148 Ill. App. 529, 532.)

"If, on the other hand, the terms of the contract are in dispute, or it is possible to draw more than one inference from the established facts which are relied on to show the intention of the parties, the jury must determine such facts or decide which of such inferences is the correct one. The court should in such cases submit the question of fact to the jury under proper alternative instructions as to the construction to be given in event of each possible finding of fact by the jury." (2 Page, Cont., § 1129.)

(See, also, *Coquillard v. Hovey,* 23 Neb. 622, 37 N. W. 479; *Martin v. Dowd,* 8 Idaho, 453, 69 Pac. 276; *Boykin v. Bank of Mobile,* 72 Ala. 262; *Clapp v. Thayer,* 112 Mass. 296.)

From the testimony and the transactions, circumstances and conduct shown, it should have been left to the jury, properly instructed, to say whether there had

been a substantial compliance with the real terms of the contract by which the parties were bound.

The order sustaining the demurrer is reversed, and the cause is remanded, with directions to grant a new trial.