[L. A. No. 1492.   Department Two.—March 8, 1907.]

# W. P. REYNOLDS, Appellant, v. PENNSYLVANIA OIL COMPANY, Respondent.

BANKRUPTCY—ADJUDICATION DOES NOT STAY APPEAL IN STATE COURTS.—The mere filing in the appellate court of a certified copy of an order made by the United States district court adjudging the respondent a bankrupt, which order was made subsequent to the taking of the appeal, does not deprive the appellate court of the power of deciding the appeal on the merits.

DEBTOR AND CREDITOR—COMPOSITION AGREEMENT—CONTRACT.—The contract set forth in the opinion, *held*, not to be a composition agreement, and not to be a bar to the plaintiff's cause of action.

PLEADING—CONTRACT PLEADED IN ANSWER—ADMISSION OF DUE EXECUTION.—Where a written contract, purporting to have been signed by an attorney in fact, is set up in the answer as a defense to the action, and the plaintiff does not within ten days after receiving a copy of the answer file an affidavit denying the due execution of the contract, as required by section 448 of the Code of Civil Procedure, the genuineness and due execution of the contract are admitted, and the plaintiff cannot on the trial introduce evidence of a want of authority of the attorney to sign the name of his principal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

George A. Corbin, for Appellant.

Tanner, Taft & Odell, for Respondent.

THE COURT.—This cause was certified to this court upon the disagreement of the justices of the district court of appeal of the second district. While the action was pending before that court the following opinion was prepared by Judge York, justice *pro tem.*, called in for the purpose of the hearing and decision of this case. That opinion is hereby adopted as the opinion of this court, and its completeness renders unnecessary any further elaboration of the questions presented.

"This action was prosecuted by plaintiff and appellant to obtain a judgment against defendant and respondent upon a claim assigned to appellant by A. M. Cates for services as an attorney and counselor at law, and upon a promissory note made by respondent in favor of Mrs. M. B. Dorland and indorsed and assigned to appellant. The respondent has filed in this court a certified copy of an order made by the United States district court adjudging respondent a bankrupt, which order was made subsequent to the appeal in this case. The respondent has not presented the bankruptcy proceedings to this court in any other form except by a notice that it would move to dismiss this appeal by reason of said adjudication in bankruptcy. In the absence of any appearance to make the motion noticed, we assume respondent's position to be that the adjudication of respondent's bankruptcy deprives this court of jurisdiction to proceed against it. Section 11 of the Bankruptcy Statute provides for a stay of proceedings on the filing of a petition in bankruptcy against a party until after an adjudication or the dismissal of the petition, and that 'if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication'; and also that 'the court may order the trustee to enter his appearance and defend any pending suit against the bankrupt.'

"The utmost, therefore, that can be contended for in behalf of the respondent is that it is discretionary with the bankruptcy court to order the parties to this action to suspend proceedings, or order the trustee to enter his appearance and defend the action on behalf of the creditors of the bankrupt.

"In Collier on Bankruptcy the author says: 'It is in no sense the duty of the state court to stay merely because it hears of the bankruptcy of a suitor. It must be informed of the fact by proper pleadings' (p. 128). 'Save in the interval between the filing of the petition and the adjudication, a stay is always discretionary' (p. 129). 'A court of bankruptcy may but need not order the trustee to intervene in a suit against a bankrupt. The state court cannot, on the other hand, compel him to intervene' (p. 131).

" 'When the right of the state court is to be questioned, it can be done by the intervention of the trustee only.' (Brandenburgh on Bankruptcy, sec. 251.)

"It follows that the proposition that this court must in this case take judicial notice of the bankruptcy proceedings on a showing of their pendency only, and suspend proceedings in this cause, finds no support in reason or justice. (*Metcalf* v. *Barker,* 187 U. S. 165, [23 Sup. Ct. 67, 9 Am. Bankr. Rep. 37]; *Pickens* v. *Roy,* 181 U. S. 177, [23 Sup. Ct. 78, 9 Am. Bankr. Rep. 47]. See, also, Brandenburgh on Bankruptcy, secs. 276, 277, 282.)

"We therefore conclude that respondent's having been adjudicated a bankrupt is not in the way of a decision of this appeal on the merits.

"The sole defense to this action urged by respondent is a certain agreement, as follows:—

" 'This agreement, made on the twenty-fifth day of January, 1902, between the Pennsylvania Oil Co., an incorporation, and the undersigned creditors of said corporation, witnesseth:

" 'That it is hereby agreed between said company and its said creditors, that the company will forthwith deliver into the possession of three trustees, representing said creditors, viz.: A. J. Munn, Corry B. White and S. T. Peet, its plant, wells, tanks, pipes, pipe-lines, franchises and all personal property and equities, oil on hand, books and accounts, and contracts, to be by said trustees administered for the mutual benefit of all parties hereto, and particularly for the payment of the debts of the corporation hereinafter enumerated, upon terms and conditions here following, to wit:

" 'Said trustees shall execute their said trust without compensation for their said services. They shall proceed in a proper manner to operate the pumping plant and take the products of the wells, being empowered to employ for such purposes all necessary help, and they shall carry out all existing contracts now binding upon said corporation, for the sale of products, operation of the plant, *et cetera,* and from the proceeds they shall:

" 'First. Pay all operating expenses, including help bills, necessary repairs and current obligations, inclusive of interest upon notes or other evidences of indebtedness, and all proper and necessary expenses for executing said trust, and also any and all claims not herein represented, which may become, or, in the judgment of the trustees are liable to become, liens upon the property of said company.

" 'Second. They shall, from the net proceeds of such operation, make the following payments:

" 'A. The note due Emma A. Summers, February 5th, 1902, for $1200.00 and interest in full.

" 'B. The following claims, which, for the purposes of this agreement are hereby established as preferred, upon which payments shall be made as often as funds on hand will warrant, *pro rata* (provided, that if the claim of the Crane Company for $818.90, interest and costs, shall, or is liable to become a special lien against the property of the company, or collectible out of the bond given in the proceedings heretofore instituted by said company in the superior court, then the trustees may, before paying anything upon the other preferred claims, discharge said obligation to said Crane Company in full: [Here follows a list of said claims, stating the names of the claimants and the amounts due each, including Crane Company, $818.90.]

" 'C. After the payment of said preferred claims, said trustees shall, in like manner, pay the following claims: [Here follows a list of said last-mentioned claims, stating the names of the claimants and the amount due each, including appellant's assignors, viz.: "Mrs. M. B. Dorland, 300.00; A. M. Cates, 362.25.'']

" 'Said trustees are hereby authorized to pay interest upon all of the above claims, which are in the form of accounts stated, at the rate of 8 per cent per annum, from the day when the same become due.

" 'And it is further agreed and understood that the foregoing marshaling of claims, both preferred and otherwise, is solely for the purposes of this agreement, and that in case the trustees shall, for any reason, fail to administer said trust to its contemplated conclusion, then each and every of said claims, or what may remain unpaid of any of them, shall be restored to the legal *status* it occupied prior to the execution of this agreement.

" 'It is further agreed and understood that the statement of the amounts of all the foregoing claims is subject to correction, and no such correction shall in any way invalidate the force and validity of this agreement as to any creditor.

" 'And the undersigned, A. J. Munn, hereby agrees that as long as this trust is administered by said trustees at a net

profit from the business of not less than $500.00 per month, he will extend the time of payment upon the principal of his admitted claim of $2000.00, which is not included in the above composition.

"'And it is agreed that this contract shall remain in full force and effect until all of said claims are fully paid; provided, that said corporation may, at any time, repossess itself of whatever property and rights which may be in the hands of said trustees, upon payment to them of an amount sufficient to discharge what then remains due upon the claims intended to be paid under this trust.

"'And said trustees will, when they have fully performed the duties cast upon them hereunder, and have made full payment of the amounts as hereinbefore set forth, deliver to said company, its successors or assigns, all of the property, rights and equities whatever at that time in their possession.

"'In case of the death, disability, or resignation of any trustee hereunder, the remaining trustees shall select his successor from among the creditors enumerated herein.

"'It is further expressly understood and agreed by and between the parties hereto, that in no case shall this trust endure for a longer time than the lives of the natural persons in being, parties hereto, or the survivors of them.

"'In witness whereof, said corporation has, by resolution duly adopted by its board of directors, and entered in its minutes, authorized the execution of this agreement by its vice-president and secretary, and attested by its seal.

"'PENNSYLVANIA OIL COMPANY,

"'By Geo. T. Gillette, Vice-President;

and C. C. Harris, Secretary.

"'(Seal of the Pennsylvania Oil Company—Incorporated. 1900.)

"'And the creditors above enumerated have set their hands the day and date first in this agreement written; this agreement being executed in duplicate. [Here follow the names of the creditors whose names appear in the contract, including signatures as follows: "Mrs. M. B. Dorland, by A. M. Cates, her attorney"; "A. M. Cates."]

"'We, the undersigned, hereby accept the above trust on February 1st, 1902.

"'A. J. MUNN, C. B. WHITE, S. T. PEET.'

"Defendant had judgment in the superior court. The appeal is from the judgment and an order denying plaintiff's motion for a new trial.

"Appellant contends that said contract is not a bar to his prosecution of this action. The contract does not purport to transfer all respondent's property to its trustees for its creditors. For aught that appears in the contract, it might have had ample property for the payment of all its debts. Neither does the contract purport to have been signed by all its creditors. It does not provide for any time within which payments may be made upon claims of the class of appellant's, and yet it provides that the contract shall remain in force and effect until all of said claims are fully paid. For aught that appears in the contract, nothing might be received by the trustees in excess of operating expenses. There is nothing whatever in the contract providing that the creditors who have signed it shall be debarred from prosecuting actions upon their respective claims. There is no covenant on the part of the creditors to discharge their claims against the debtor on the payment of less than the full amount of their claims. As a composition agreement it lacks essential covenants.

"In *Pierson* v. *McCahill*, 21 Cal. 123, the contract which was set out in full in the opinion of the court is more definite and certain than the contract under review in this case. In that case there was an assignment of the debtor's stock of goods and his accounts and notes and a covenant that when the creditors should have received fifty cents on each dollar of the indebtedness he should be replaced in possession of the remaining stock. But it was not deemed sufficient without reformation, to bar an action by one of the creditors who had signed the agreement. In speaking of a composition agreement in *Kullman* v. *Greenebaum*, 92 Cal. 403, [27 Am. St. Rep. 150, 28 Pac. 674], the court, quoting approvingly from *Solinger* v. *Earle*, 82 N. Y. 393, says: 'A composition agreement is an agreement as well between the creditors themselves as between the creditors and their debtor. Each creditor agrees to receive the sum fixed by the agreement in full of his debt.' In *Wilson* v. *Samuels*, 100 Cal. 514, [35 Pac. 148], a composition agreement between debtor and creditors is defined as 'an agreement made upon a sufficient consideration between an insolvent or embarrassed debtor and his cred-

itors, or a considerable proportion of them, whereby the latter, for the sake of immediate or sooner payment, agree to accept a dividend less than the whole amount of their claims, to be distributed *pro rata*, in discharge and satisfaction of the whole.'

"The only clause that respondent could contend would have the effect of barring plaintiff's cause of action is that wherein it is stipulated that 'the foregoing marshaling of claims, both preferred and otherwise, is solely for the purposes of this agreement, and in case the trustees shall for any reason fail to administer said trust to its contemplated conclusion, then each and every of said claims, or what shall remain unpaid of any of them, shall be restored to the legal *status* it occupied prior to the execution of this agreement.' Considering the whole contract so as to give effect to every part, if reasonably practicable, there is only an inference that the contract wrought a change in appellant's '*status*.' A *status*, as applied to a claim such as those upon which this action was brought, can mean nothing more than its standing, state, or condition. (Anderson's Dictionary of Law, 968.) There was a change in the *status* of appellant's claim in this: His assignors having assented to the transfer of certain of respondent's property to trustees for respondent's creditors, and having joined with respondent's creditors in that contract, one of the terms of which was that certain claims were to be paid in the execution of that trust in preference to the claims of appellant's assignors, their right to proceed against that property was lost or suspended. A restoration of that *status*, therefore, would have the effect of enabling appellant's assignors or appellant to cause the property so transferred to trustees to be levied upon to secure said indebtedness. We, therefore, hold that said contract was not a bar to plaintiff's action.

"The signature of Mrs. M. B. Dorland to said contract, signed 'M. B. Dorland, by A. M. Cates, her attorney,' was called in question on the trial of the case, and A. M. Cates testified with regard to his authority to sign the name of Mrs. M. B. Dorland, wherein it appears that said Cates was not authorized to sign Mrs. Dorland's name to said contract. The court, on motion, struck out this testimony, presumably on the ground that the plaintiff did not, within ten days after

receiving a copy of respondent's answer, file an affidavit denying the due execution of the contract, as required by section 448 of the Code of Civil Procedure. We think that the action of the court was correct. This was substantially decided in the case of *Knight* v. *Whitmore*, 125 Cal. 198, [57 Pac. 891]. In that case the defendant had set out in her defense an agreement in writing, signed 'Knight, Simpson & Harpham, by C. M. Simpson.' The execution of the agreement was not denied by affidavit, as provided in said section, and it was held that the genuineness and due execution of the instrument should have been deemed to have been admitted for all the purposes of the trial. It was claimed by the plaintiffs on the trial that the firm of Knight, Simpson & Harpham had been dissolved prior to the signing of said instrument, and that said Simpson had no authority to bind the plaintiffs by the contract he entered into with defendant in behalf of plaintiffs. It was held that plaintiffs, by their failure to deny by affidavit within ten days the due execution of the contract signed as above stated, admitted the genuineness and due execution of the contract; that such admission carried with it the genuineness of the signatures and the fact of its execution, and also, necessarily, the further fact that Simpson had authority to sign the names of the plaintiffs to the document. On this point we fail to see any distinction in principle between the case at bar and the case last above cited; and on the authority of that case we hold that the trial court did not err in striking out the evidence of Cates with regard to his authority to sign Mrs. Dorland's name to the contract above set forth.

"It follows, however, from our interpretation of the contract, that the court erred in rendering judgment in favor of the defendant in said action."

It is, therefore, ordered that the judgment and order appealed from be reversed.