[Civ. No. 4090. Third Appellate District.—May 13, 1930.]

L. BOTELER, Appellant, v. C. A. ROBINSON et al., Respondents.

612

W. T. Craig and Merrill L. Granger for Appellant.

Kennith H. Burns and A. P. Nelson for Respondents.

FINCH, P. J.—This is an action to recover the balance alleged to be due on a promissory note. The answer alleges and the court found that the note had been paid in full prior to the commencement of the action and judgment was entered in favor of the defendants. The plaintiff has appealed from the judgment. The only question to be determined is whether the note has been paid.

At all times during the transactions mentioned herein the plaintiff was the assistant secretary of the Los Angeles Wholesalers' Board of Trade and acted in that capacity in connection with such transactions. Prior to April 8, 1925, Mayme Crew was operating as a retail merchant. She became indebted to a number of creditors and was unable to pay them. On the day mentioned she entered into an agreement with the defendant C. A. Robinson and the plaintiff, by the terms of which she agreed to sell her business and stock of merchandise to Robinson for the sum of $7,000 to be evidenced by a promissory note for that sum payable to the plaintiff and executed by Robinson and J. H. McGehee. The defendants gave the plaintiff their promissory note in accordance with the terms of the contract and Robinson and his wife, the defendant Myrtle Robinson, took charge of the business. The business did not prove profitable and on November 13, 1925, the following agreement was executed by the persons named therein:

"This Agreement, Made this 13 day of November, 1925, between C. A. and Myrtle Robinson, . . . parties of the first part, hereinafter referred to as assignor, L. Boteler, . . . party of the second part, hereinafter referred to as assignee, and the creditors of the assignor signing this agreement, consenting hereto in writing or whose claims may be filed with and allowed by the assignee, parties of the third part,

"Witnesseth: That said assignor, for and in consideration of the covenants and agreements to be performed by the parties of the second and third parts, as hereinafter contained, and the sum of $1 to assignor in hand paid by the assignee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, assign and transfer unto said assignee, his heirs and assigns forever, all of the property of the assignor of every kind and nature and wheresoever situated, both real and personal, not exempt from execution, including all that certain stock of merchandise, store furniture and fixtures, book accounts, books, bills receivable, cash on hand, choses in action, insurance policies, and all other personal property of every kind and nature situated in or pertaining to that store . . . now owned and conducted by said assignor, . . . except real estate leases and leasehold interests in real estate. Said assignee to receive the said property, conduct the said business, should he deem it proper, and is hereby authorized at any time after the signing hereof by said assignor to sell and dispose of the said property upon such time and terms as he may see fit, and is to pay said parties of the third part, *pro rata,* according to the several indebtednesses due to them from the said assignor, the net proceeds arising from the conducting of said business and sale and disposal of said property after deducting all moneys which said assignee may at his option pay for the discharge of any lien on any of said property and any preferred indebtedness, and all charges (subject to the Constitution, By-Laws and Rules of the Los Angeles Wholesalers' Board of Trade, which are hereby made a part hereof).

"In consideration of the premises the parties of the third part do hereby agree to accept their *pro rata* portion of the net recoveries from this estate as paid to them by said assignee."

The Robinsons made payments on their promissory note to the plaintiff in the aggregate sum of about $3,500. The assets of the assignors were sold by the plaintiff and the net proceeds applied *pro rata* in accordance with the terms of the assignment, each creditor receiving about forty per cent of the amount of his claim. Out of such proceeds the plaintiff received and credited on the note the sum of $1,982.57, leaving a large balance due thereon. A. B. Fately was an adjuster of the Los Angeles Wholesalers' Board of Trade. In that capacity he procured the assignment involved herein. In relation to the execution of the assignment, the following testimony was given by the defendant C. A. Robinson over the plaintiff's objection that "it is incompetent, irrelevant and immaterial and wholly outside the issues in this case; . . . and for the further reason that it is an attempt to alter, vary or contradict the terms of a written contract."

"I told the fellow (Fately) I was going to put the matter in the hands of the bankruptcy court. He told me not to do that, that the Board of Trade's way of handling business would be that they would take and leave him there until the store had paid itself out and give her [Mrs. Robinson] a position to support herself, turn the stock back to her when the stock was clear of any indebtedness. . . . That was the reason I turned it over to the Board of Trade. . . . He showed me in the assignment where it was a preferred note, . . . told me plainly that that note would be paid first before anything else was paid. . . . He told me that that note would be taken care of, that if such a thing happened that the stock was sold, that the note would be paid first before anything else was paid. . . . He told me I would be clear of all I owed on that note, the note would be paid. . . . Out of the stock, if the stock was sold; otherwise payments would be kept up. . . . Q. Did Mr. Fately tell you that if you would make that assignment it would be in full payment of that note? A. Full payment, not only the note, but would release me, the Board of Trade would give me a release, give me clearance, . . . clearance of my indebtedness."

Mrs. Robinson testified to the same effect as the foregoing and Fately testified to the contrary.

The assignment is not a composition agreement. As said in *Reynolds* v. *Pennsylvania Oil Co.,* 150 Cal. 629, 634 [89 Pac. 610, 612], "There is no covenant on the part of the creditors to discharge their claims against the debtor on the payment of less than the full amount of their claims." It is not a statutory assignment for the benefit of creditors as authorized by sections 3449 to 3473 of the Civil Code. There was no attempt to comply with the provisions of those sections. The agreement, however, while not a statutory assignment, may properly be termed an assignment for the benefit of creditors. (*Jarvis* v. *Webber,* 196 Cal. 86, 98 [236 Pac. 138].)

"Ordinarily an assignment for the benefit of creditors and the payment of dividends thereunder do not act as a discharge of the debtor, except to the extent that the claims of creditors are thereby reduced by actual payment." (2 R. C. L. 667.) Such assignments often contain a condition that the debtors shall be released from further liability, and that condition in an assignment is binding upon creditors who accept the benefits of the assignment. *Equitable Life Assur. Soc.* v. *Jacobson,* 68 Cal. App. 717 [230 Pac. 200].) It appears that the assignment considered in the case last cited was substantially to the same effect as the one involved herein, except that it was expressly provided in that assignment that the creditors consenting thereto should "accept in full payment of their several indebtednesses said *pro rata* payments to be made to them by said second party hereunder." It would not be contended that parol evidence would be admissible to add a similar provision, relating to the creditors generally, to the assignment in this case, no "mistake or imperfection of the writing" being put in issue by the pleadings and the "validity of the agreement" not being in dispute. (Code Civ. Proc., sec. 1856; Civ. Code, sec. 1625.) If such parol proof is inadmissible to show a discharge of the debtor by all the creditors, it certainly is inadmissible to prove a discharge by one or more of them. The verbal agreement to give the promissory note preference is in direct conflict with the express provision of the written assignment to the effect that all the creditors were to be paid "*pro rata,* according to the several indebtednesses due to them from said as-

signor," and the admission of proof of such agreement was error.

The judgment is reversed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 12, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1930.