BANK OF NEW LONDON, Respondent, vs. KETCHUM and another, Appellants.

*September 5 — September 22, 1885.*

CONTRACTS: BANKING CORPORATIONS. *(1) Agreement to pay debt of another: Evidence. (2) Ratification of informal act of directors.*

1. The evidence in this case is *held* to warrant a finding that the plaintiff bank, upon taking the assets and assuming the liabilities of the private banking business of one P., did not agree to pay certain notes executed by him, and that the plaintiff was therefore not liable to the defendant upon a counterclaim for moneys paid by the latter as indorser on said notes.
2. Where a majority of the directors of a bank make an informal agreement to take the assets and assume the liabilities of a private banking business, and the corporation thereupon takes and retains such assets under the agreement, it will be held to have ratified the action of the directors and to be bound by all the terms of the agreement.

APPEAL from the Circuit Court for *Outagamie* County.

The action is upon a promissory note, dated February 2, 1883, made by the defendant *Ketchum*, indorsed by the defendant *Hoxie*, and held and owned by the plaintiff bank. The liability of the defendants to the bank on this note is not denied.

The defendants, in their answer, set up a counterclaim for moneys paid at various times by *Ketchum* (who is the principal debtor on the note in suit) to one C. P. Skinner,

and allege that such payments, which exceed the amount of the plaintiff's demand, were made for the plaintiff on demands which the latter had assumed and agreed to pay. Whether such payments were or were not so made for the bank, was the only question litigated on the trial. The jury found they were not, and returned a verdict for the plaintiff for the full amount of the note in suit. The court denied a motion for a new trial, and gave judgment for the plaintiff pursuant to the verdict. The defendants appeal from the judgment. The case is stated in the opinion.

For the appellants there were briefs by *G. W. Cate*, attorney, and *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*.

*Gabe Bouck*, for the respondent.

LYON, J. The jury found, in effect, that the moneys mentioned in the counterclaim, which were paid by *Ketchum* to Skinner, were not so paid for the plaintiff bank, and hence such payments were no grounds for a counterclaim against it. This is the necessary significance of the verdict. The only question upon the evidence is, therefore, Does the testimony sustain the verdict in this behalf?

In the summer and fall of 1876 a private banking business was carried on at New London, ostensibly by L. C. Patterson & Co., under the style of "The Bank of New London." The testimony tends to prove that L. C. Patterson alone carried on the business; also that he carried on other business, or "transactions," as a witness calls them, entirely separate from his banking business. About September 1, 1876, Patterson and some twenty other persons duly recorded a certificate for the incorporation, under state laws, of the "*Bank of New London*," the plaintiff, in which Patterson is named as president, and one Bingham as vice-president. Also nine directors were named, among whom were the defendant *Ketchum*, and Messrs. Bingham, Dixon,

Sterling, and Logan, hereinafter mentioned. Down to November 25, 1876, the board of directors did nothing except to adopt by-laws, and the corporation transacted no business, and had no assets whatever.

November 13, 1876, Patterson executed six notes of $1,000 each to the order of J. W. Bingham, payable at a bank in Chicago, and Bingham, Logan, Dixon, and Sterling, above named, and the defendant *Ketchum* indorsed them to C. P. Skinner, cashier, or order, for the accommodation of Patterson. The First National Bank of Westfield, New York, of which Skinner was cashier, received these notes, and before November 25th advanced to Patterson $3,500 thereon. [For convenience we will hereinafter refer to these notes as held by Skinner.]

On the evening of Saturday, November 25, 1876, Skinner, and the five indorsers above named, met in the banking-house of Patterson & Co. (or Patterson) and discussed the affairs of Patterson, who was insolvent. At that interview schedules of the assets of the private bank of Patterson, consisting entirely of its bills receivable, or discounts, and a small sum of money, and of its liabilities, consisting entirely of sums due depositors, were furnished by Mr. Perrin, the clerk in such private bank. In these schedules the liabilities exceeded the assets $4,445. Skinner informed the other persons present that he had advanced $3,500 to Patterson on the notes of November 13th, indorsed by them. He also insisted that certain notes of Patterson to Brown & Briggs for $2,200 should be paid out of the proceeds of the notes for $6,000, for the reason that Patterson was criminally liable upon such indebtedness. He proposed that the plaintiff bank purchase the assets of the old banking-house, pay its liabilities, and commence and continue its business, and offered to loan the plaintiff a certain sum of money to enable it to do so. This proposition seems to have been accepted and agreed to by the five indorsers, who,

although constituting a majority of the directors of the plaintiff, manifestly were not acting as a board of directors.

On Monday morning, November 27, 1876, the board of directors of the plaintiff held a special meeting and resolved to open the bank that morning for the regular dispatch of business. The board did not formally ratify and confirm the agreement of the five directors and indorsers of the preceding Saturday evening, but the plaintiff, by its authorized officers and agents, took the scheduled assets of the private bank, and at once commenced the business of banking. It also paid the scheduled depositors, and accepted a loan of money from Skinner. On the same day (November 27th) Patterson executed to Bingham, in trust for the five indorsers, a bill of sale of certain personal property, including the furniture, stationery, etc., in the banking-house, and an obligation to convey to him, in trust for the same persons, certain lands owned by Patterson. These instruments contain no other declaration of trust, although the testimony tends to show that the real trusts agreed upon were that the trustee should dispose of the trust property and apply the proceeds (1) to pay the plaintiff all sums it might have to pay for Patterson in excess of the assets received, and (2) to pay any surplus to the indorsers, to indemnify them for what they should pay by reason of their indorsements.

At the same time the six $1,000 notes were canceled, and other notes given by the five indorsers in place of them. The latter notes were renewed from time to time, and were ultimately paid by such indorsers in equal proportions. Some of these notes were made payable to Bingham; others, to Bingham, president. The defendant *Ketchum* paid one fifth of the $6,000, besides interest.

On November 28th, the day after the plaintiff commenced business, Patterson resigned the presidency of the plaintiff, and Bingham was duly appointed in his place. A vice-pres-

ident and cashier were also appointed. The plaintiff has continued its business until the present time.

The single question of fact is, Did the plaintiff assume and agree to pay the indebtedness of Patterson to the defendant *Ketchum*, resulting from his having indorsed the notes of Patterson and afterwards paying a portion of the indebtedness created thereby? It is obvious, from the foregoing statement of the case, that there is nothing in the case which fixes any liability upon the plaintiff to reimburse the defendant *Ketchum* for such payments, unless the plaintiff so agreed. The fact that the plaintiff became the owner of the assets of Patterson's banking-house, or of all the assets of Patterson, does not charge it with the payment of this debt of Patterson to the said defendant, or any other debt of his, unless the plaintiff, as part of the consideration of the purchase, agreed to pay the same. Whether it did so agree is the question to which the testimony on the trial was largely directed, and such testimony is conflicting. There was ample testimony on the part of the defendants tending to show that the plaintiff did so agree, to have upheld the verdict, had it been for the defendants, sustaining the counterclaim. On the other hand, we are clearly of the opinion that there was also sufficient testimony to warrant the jury in finding that the plaintiff did not assume the payment of Patterson's notes, upon which the defendant *Ketchum* was an indorser. Conceding that the plaintiff ratified the terms of the alleged agreement made on the evening of November 25th, pursuant to which the assets of Patterson passed to the plaintiff, and that it is bound thereby (and we think the plaintiff has ratified it and is so bound), there was positive testimony that the agreement was that the plaintiff should assume no indebtedness of Patterson other than what he owed to depositors in his private bank, and that the indebtedness on which the counterclaim is predicated had no connection with Patterson's banking busi-

ness, and was not included in such agreement, and hence not assumed by the plaintiff. With such testimony in the record the verdict cannot be set aside as against evidence.

The instructions given to the jury by the court were to the effect that if the plaintiff's board of directors assumed this debt on November 25th, or afterwards ratified the informal agreement of members of such board to do so, the defendants' counterclaim was thereby established. Also that a failure to return the assets of Patterson, which it received under the agreement, would be such ratification. by the bank, and would bind it to pay the agreed price therefor, including the notes of November 13th, if the agreement was that the plaintiff should pay them. This, we think, is the law of this case. Besides, our attention has not been directed to any exception to the charge of the learned circuit judge, and it is unnecessary to state it more fully, or to comment further upon it.

Errors are assigned upon several rulings of the court sustaining objections to testimony offered on behalf of the defendants, or rather to questions put to witnesses. We have examined these objections, and are satisfied that such of the interrogatories as were admissible and material and in proper form, were fully answered in the course of the trial, and that the rulings of the court did not operate to shut out any material testimony which ought to have been received.

Error is also assigned on the refusal of the court to grant a new trial. There was an utter failure by the defendants to make any showing which would entitle them to a new trial, and their counsel seem not to rely upon this assignment of error.

The judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.