CENTRAL TRUST CO. OF NEW YORK v. ASHVILLE LAND CO. et al.

(Circuit Court of Appeals, Sixth Circuit. March 3, 1896.)

No. 342.

1. CORPORATIONS—AGENT'S AGREEMENT FOR ARBITRATION—RATIFICATION.
    If an English corporation, controlled by a board of directors in England, objects to an agreement made by its general manager in this country to submit to arbitration a claim against the company for a trespass in cutting timber from the lands of another, it is its duty, within a reasonable time of receiving notice of the agreement, to notify the other party of its disapproval; and, in the absence thereof, a ratification may be presumed. The assertion of counterclaims by it is not a disaffirmance, but rather justifies a presumption of an affirmance.
2. TAXATION BY COUNTIES—LEVY BY COURT—SUFFICIENCY OF RECORD.
    Under the Tennessee statute authorizing counties to lay the same or a less tax upon privileges as that levied by the state, it is sufficient if the record of the court levying the county tax shows that the rate on privileges is made the same as that of the state, for the subjects of the tax and the rate on each are definitely specified in the revenue law of the state, and by reference thereto the county tax is definitely shown.
3. SAME.
    The Tennessee statute requires that three-fifths of the justices entitled to attend are necessary for the levying of a county tax. Mill. & V. Code, § 4974. By requirement of the state laws there is an official record of the division of the counties into districts, and of the election and commission of every justice of the peace entitled to sit at the sessions of the county court. *Held*, therefore, that where the record of a session at which a tax was levied shows that a specified number of the justices were acting, who, by reference to the official records above referred to, of which the court takes judicial notice, are ascertained to constitute three-fifths of the number entitled to attend, this is sufficient evidence that the requisite proportion acted in levying the tax.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

John K. Shields, for appellants.

Jesse L. Rodgers, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge. The Central Trust Company of New York, trustee under a mortgage made by the American Association, Limited, an English corporation owning lands in Tennessee,

filed its foreclosure bill in the circuit court of the United States for the Eastern district of Tennessee. Subsequently Henry Holbrook Curtis filed an independent bill in the same court for the purpose of winding up the affairs of the American Association, Limited, as an insolvent corporation. Receivers were appointed, the property of the corporation placed in their possession, and the two causes consolidated. The Ashville Land Company, a corporation of the state of Tennessee, and the county of Claiborne, one of the counties of the state of Tennessee, became parties by intervention, for the purpose of asserting claims against the American Association, Limited. Each of these interveners obtained decrees, from which appeals were allowed to this court. The claim of the Ashville Land Company, as presented by its intervening petition, was that it was the owner of lands in Tennessee upon which the American Association, Limited, had trespassed by cutting and removing timber to the value of about $2,000, and that its claim for damages had, by agreement between the two corporations, been submitted for arbitration to one John M. Brooks, who assessed the damages at the sum of $1,933.71, which sum the American Association, Limited (hereafter called the "English Company"), had not paid, although it had accepted the award, and promised to pay the sum thus awarded. The English Company denied the trespass, denied the authority of its agent to submit the matter to arbitration, and denied any agreement to pay the award of the arbitrator. It also set up a claim for money paid for and on account of the Ashville Land Company, amounting to $600, and pleaded this by way of offset. The issues thus presented were referred to D. A. Gaut as special master, to take proof, and report his conclusions of law and fact. The special master reported that the claim of the Ashville Land Company had been submitted to the arbitration of John M. Brooks, through the action of A. A. Arthur, general manager and representative in Tennessee of the English Company, and that the arbitrator had found that the English Company was liable, by reason of the trespass mentioned, to pay the sum of $1,933.71. He further reported that this award had been ratified by the directors of said English Company. He found in favor of the set-off claimed by the latter company, and that, after crediting same, there was due $1,462.86, with interest from May 28, 1892, and that this sum was entitled to priority over the mortgage to the Central Trust Company by virtue of priority in date and the statute of Tennessee giving preference to domestic creditors out of the assets of foreign corporations doing business within the state. The exceptions filed to this report were overruled, and a decree rendered accordingly.

The errors assigned involve two questions. First. The authority of A. A. Arthur, as an officer of the English corporation, to submit the claim of the Ashville Land Company against the English Company to arbitration. Second. If his authority was insufficient, then has his act in excess of his agency been ratified by the corporation?

Arthur's position is designated as that of "general manager." Whether his duties and powers were defined by any by-law of the company does not appear, though no such office or officer is mentioned in its cha~ter. The company whose agent he was, in respect of such matters as were properly within the scope of a "general manager," was, as before stated, an English corporation managed by a board of directors from its principal office in London. Its charter powers were very wide, and contemplated the conduct of a varied business in America. It had authority to buy, own, and sell lands, lay off and build up towns, engage in iron and steel making, railroad building, and generally to do all that pertains to a town-building, mining, manufacturing, and land-speculating company. Arthur was its chief representative in America, where these varied enterprises were to be chiefly conducted. A power of attorney was given him of limited character, and evidently intended as only partially defining his powers, for it relates alone to his power to make sales of town lots or parcels of land, lay off roads, streets, etc. It is, however, difficult, on this record, to say that he had authority, by reason of either the recorded power of attorney or the general and undefined powers of a general manager, to submit a claim against his corporation to arbitration, without express authority from the directors. This it is unnecessary, however, to decide, for we are clearly of opinion that if he exceeded his powers in signing the articles of submission his act was subsequently affirmed by his directors. He did, while its representative in America, and while exercising the authority of a general manager, enter into an agreement with the appellee for an arbitration of a matter in dispute between the two corporations, and that the award should be final. After the award was made, it, together with the submission, and a statement of the circumstances made out by his assistant, was forwarded to the company at its London office, which thus became apprised of the action of its general manager, and of the result. That the company had the power to submit such a claim to arbitration, or to authorize Arthur, in his discretion, to do so, is not questioned. The most that can be said is that he, as general manager, exceeded his power in doing so under the constitution and by-laws of the corporation. If the company so regarded this agreement, it was its undoubted duty, upon being apprised that he had made this submission, to in a reasonable time disaffirm his act, and notify the Ashville Land Company of its disapproval. Failing to do this within reasonable time, a ratification may be presumed. Indianapolis Rolling-Mill v. St. Louis, Ft. S. & W. R., 120 U. S. 256, 7 Sup. Ct. 542; Pittsburgh, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770. The evidence submitted not only fails to show such disaffirmance within a reasonable time, but tends strongly to establish that his action was affirmed. The correspondence between the London office and the American office, and between the latter and the Ashville Company, seems to establish that the directors sought to offset the award by the assertion of

counterclaims, or to pay the award, provided they could recoup from certain persons to whom it had sold timber from its own lands, and who were supposed to be the real trespassers or beneficiaries of the trespass. Under the circumstances, the company was called upon, when apprised of the agreement to submit to arbitration, to distinctly repudiate the agreement, and give notice accordingly. This it did not do, and the assertion of counterclaims was by no means a disaffirmance, but was such conduct as justifies a presumption that it affirmed the submission. The decree in favor of the appellee must be affirmed.

The petition of the county of Claiborne asserted that the English Company was liable for the privilege tax assessed in 1890, 1891, 1892, and 1893 for county purposes, for exercising the privileges of a land-stock company within that county. The special master reported a liability for the three years first named, and exceptions to this report were overruled, and the report confirmed.

The first objection now urged goes to the vagueness of the record from the county court assessing or imposing a tax on privileges for county purposes during the several years involved. The law of Tennessee permits counties to lay the same or a less tax upon privileges as that levied by the state for state purposes. The objection seems to be that the county court order does not specifically mention the privileges subjected to the tax. That is not essential. The only discretion vested in the county court was as to the amount to be levied on privileges for county purposes, which may be less, but not greater, than that levied by the state, and without discrimination between privileges. The court in each instance appointed a committee to recommend to the court a proper tax levy on both property and privileges, which report was received and adopted. This report included a recommendation as to the necessary rate of the direct property tax for state, county, school, and special purposes, and concludes by reporting that the rate "on privileges should be the same as the state." This, in our judgment, was sufficient, as the subjects of the tax and the rate on each were definitely specified in the revenue law of the state. That is certain in law which by record can be made certain.

It is next urged that the levy in each instance was void, because it does not affirmatively appear that three-fifths of the justices composing the county court were present when the report of the committee on rates was adopted. By section 4974 of Milliken & Vertrees' Compilation of the Laws of Tennessee it is provided that "three-fifths of the justices entitled to attend shall be required to levy a tax, or to appropriate public money." The proceedings of the county court levying the tax now in question were filed as part of the record, and recite by name the justices present, but do not affirmatively state that these constituted three-fifths of those entitled to attend; and for this reason it is urged that there was no valid tax levy during the years 1890, 1891, and 1892. The provision in the Tennessee Code requiring a specified number or proportion of the justices composing the court to be present for any

given purpose has been uniformly construed by the supreme court of the state as rendering void an action of the court which did not on the record appear to have been transacted or ordered by a court composed of the requisite number. Coleman v. Smith, Mart. & Y. 36; Mankin v. State, 2 Swan, 206; McCullough v. Moore, 9 Yerg. 305. The question thus presented requires us to determine whether the record of the proceedings of the county court at which the privilege tax levy was ordered for 1890, 1891, and 1892, shows that there were present three-fifths of the whole number of justices entitled to attend. The record does show that when the levy was ordered for 1890 there were "present and acting" 30 justices; in 1891, 32; and in 1892, 29. The evidence does not show how many justices constituted a full bench of the county court of Claiborne county, and the contention is that the county court record must affirmatively show that those present when each levy was ordered constituted the requisite number essential to lay a tax. The Code of Tennessee provides that counties shall be laid off by the county courts into civil districts of convenient size, the number of districts being proportioned to the voting population, so that the whole number shall not exceed 25 nor be less than 4. Rev. St. Tenn. (Mill. & V. Code) §§ 81–84. By section 85 the county court is required to cause a map of the county to be made, exhibiting the districts, and giving the boundaries of each, and to record the same in the office of the county clerk, and to file a copy with the secretary of state. Sections 389 and 392 of the same revision provide that for each district of every county there shall be elected two justices of the peace, and for the district including the county town one additional, and for every county or incorporated town one additional justice. By law, all of the justices of a county are required to attend at every quarterly session of the county court. Acts Tenn. 1887, c. 236. Every justice holds his office for a term of six years, is elected by the lawful voters of the district, and is commissioned by the governor. Thus there is an official record of the division of Claiborne county into districts, and an official record of the election and commission of every justice who was entitled to sit at the sessions of the county court of Claiborne county when the tax in question was assessed on privileges. Of these records we may take judicial notice, and from them are apprised that the number of justices shown by the record of the county court to have been present and acting were more than three-fifths of the whole number entitled to sit. A court will take judicial notice of the local divisions of the country, its division into states, and of the latter into counties, districts, or townships and the like. Greenl. Ev. § 6. So it may judicially know the political constitution of the government, and who constitute those charged with the administration of the government, as the sheriffs, clerks, judges, etc. "Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction. In all these, and the like cases, where the memory of the judge is at fault, he resorts to such documents of reference as may be at hand,

and he may deem worthy of confidence." Greenl. Ev. § 6; Jones v. U. S., 137 U. S. 202–216, 11 Sup. Ct. 80; U. S. v. Jackson, 104 U. S. 41; Fancher v. De Montegre, 1 Head, 40; Moody v. State, 6 Cold. 299. The presumption that justices present and acting when the court met continued present, and participated in the assessment of this tax, can only be rebutted by some other part of the record. McCullough v. Moore, supra. This has not been done. It was not essential for the journal of the court to show that those present constituted the requisite number to lay a tax, if the number of those recited as present is judicially known to the court to be more than the requisite number. The decree in favor of the county must be affirmed.