(March 24, 1917.)

BEN. Q. PETTENGILL, as Special Deputy Bank Commissioner of the State of Idaho and as Receiver in the Matter of Winding Up the Affairs of the BOISE STATE BANK, LIMITED, an Insolvent Bank and Trust Company, Appellant, v. WILLIAM H. BLACKMAN and HERBERT F. LEMP, EDWARD PAYNE, as Trustee, and EDWARD PAYNE, Respondents.

[164 Pac. 358.]

ACTION TO QUIET TITLE—ADVERSE INTERESTS—ADMISSION OF GENUINE-NESS OF INSTRUMENT NOT ADMISSION OF VALIDITY—TRANSFER BY INSOLVENT CORPORATION—CONSIDERATION—UNLAWFUL MEETING OF BOARD OF DIRECTORS—UNAUTHORIZED ACTS OF CORPORATION OFFI-CERS—RATIFICATION—ESTOPPEL.

    1. *Held*, that in this case an action to quiet title is a proper form of action to attain the end desired, as shown by the pleadings.

2.   In a suit to quiet title the plaintiff has a right to have every adverse interest determined, and anyone claiming to hold any interest in the property in question, which would be adverse to plaintiff's interest, may be required to come in and set up the nature of his interest and its source. The interest of a mortgagee is an interest adverse to the holder of a legal title.

3.   Where plaintiff has waived his right to introduce evidence attacking the due execution or genuineness of a written instrument pleaded and set forth in defendant's answer, by failing to file an affidavit denying the same, as required by sec. 4201, Rev. Codes, such omission does not place him in the position of admitting the validity of such instrument, but he may interpose any evidence on the trial tending to show that such instrument, irrespective of its due execution and genuineness, is void, invalid and of no effect for the purpose offered.

4.   In the absence of collusion or fraud, an insolvent corporation is not prohibited from preferring certain creditors over others.

5.   Where an insolvent corporation makes a *bona fide* transfer of property to a creditor as security for an actual indebtedness and for an adequate consideration, neither collusion nor fraud in its legal sense can be predicated on such transaction.

6.   Where a meeting of the board of directors of a private corporation was not lawful, for the reason that notice was not given to all of the directors as required by the by-laws, the failure of absent directors or the stockholders to dissent or take any action to set aside the action of the board of directors, under such circumstances, with knowledge of such action, amounts to a ratification thereof.

7.   Where a private corporation receives and retains the benefits of an unauthorized or illegal transaction, on the part of its board of directors, such conduct amounts to a ratification.

8.   The extension of time by a creditor within which to pay an old obligation is as much a consideration and as much an extension of credit as the granting of a new loan.

9.   Where one without collusion or fraud deals with a corporation through an officer, who is in active management of the corporate business, if the act done by such officer is one which the corporation might do, such corporation will be estopped from relying upon any lack of authority on the part of such officer as a defense against the rights of the party so dealing with the corporation.

10.   Where a party deals with a corporation in good faith and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing

to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists.

[As to clouds on title and who may maintain suits to remove them, see note in 45 **Am. St.** 373.]

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Charles P. McCarthy, Judge.

Action to quiet title to certain real property, brought under sec. 4538, Rev. Codes.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

Martin & Cameron, for Appellant.

The giving of the trustee deed and mortgage by the Boise State Bank was unauthorized.   The board of directors of the bank did not meet pursuant to law at the time the mortgage and trustee deed were acted upon.   (2 Thompson on Corporations, secs. 1139, 1140; *Doernbecher v. Columbia City Lumber Co.,* 21 Or. 573, 28 Am. St. 766, 28 Pac. 899; *Curtin v. Salmon River etc. Co.,* 130 Cal. 345, 80 Am. St. 132, 62 Pac. 552; *Singer v. Salt Lake City C. Mfg. Co.,* 17 Utah, 143, 70 Am. St. 773, 53 Pac. 1024; *Harding v. Vandewater,* 40 Cal. 77; *Farwell v. Houghton Copper Works,* 8 Fed. 66; *Bank of Little Rock v. McCarthy,* 55 Ark. 473, 29 Am. St. 60, 18 S. W. 759; *Stow v. Wyse,* 7 Conn. 214, 18 Am. Dec. 99; *Hatch v. Lucky Bill Mining Co.,* 25 Utah, 405, 71 Pac. 865; *Simon v. Sevier Assn.,* 54 Ark. 58, 14 S. W. 1101; *Whitehead v. Hamilton Rubber Co.,* 52 N. J. Eq. 78, 27 Atl. 897; *Paola etc. Ry. Co. v. Anderson, County Commrs.,* 16 Kan. 302.)

In the giving of the contemplated deed to Blackman, Payne was to act as a trustee, with limited powers, according to the minutes of the directors' meeting.   He was to be trustee appointed by the bank for this particular purpose, and any act done by Payne, without the scope of this trusteeship there given him, was invalid and void, and cannot bind this plaintiff.   (*Owen v. Reed,* 27 Ark. 122; *Zion Church v. Parker,* 114 Iowa, 1, 86 N. W. 60; *Smith v. Burgess,* 133 Mass. 511; Perry on Trusts and Trustees, sec. 475.)

A contract not within the scope of the authority of the officer who made it could not be ratified by the board of directors unless they had full and complete knowledge of the terms and conditions of the contracts proposed to be ratified. (2 Thompson on Corporations, 2d ed., sec. 2030, and cases cited; *Conqueror Gold Min. etc. Co. v. Ashton,* 39 Colo. 133, 90 Pac. 1124.)

The plaintiff by failing to file an affidavit denying the genuineness and due execution of this note and mortgage did not thereby admit that said note and mortgage were the note and mortgage of the Boise State Bank, and thereby preclude himself from showing that said note and mortgage were not authorized by the board of directors. (*Myers v. Sierra Valley etc. Assn.,* 122 Cal. 669, 55 Pac. 689; 3 Thompson on Corp., 2d ed., p. 1225; *Heath v. Lent,* 1 Cal. 410, 411; *Marx v. Raley & Co.,* 6 Cal. App. 479, 92 Pac. 519.)

The case of *Cox v. Northwestern Stage Co.,* 1 Ida. 376, curtails the effect of a failure to file an affidavit denying the genuineness and due execution, and points out that any other defense may be interposed except what is strictly included within genuineness and due execution.

The officers of a corporation can only execute a deed in its name pursuant to resolution of the board of directors. (*Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540; *Johnson v. Sage,* 4 Ida. 758, 44 Pac. 641; *Bliss v. Kaweah Const. & Irr. Co.,* 65 Cal. 502, 4 Pac. 507.)

It is the execution only that is admitted by an affidavit and not the right or authority of the party making it. (*Hilsmeyer v. Blake,* 34 Okl. 477, 125 Pac. 1129; *Flesher v. Callahan,* 32 Okl. 283, 122 Pac. 489.)

Acts done by an agent or trustee outside the strict scope of his authority are absolutely void. (*United States Nat. Bank v. Herron,* 73 Or. 391, 144 Pac. 661, L. R. A. 1916C, 125; 1 Clark & Skyles on the Law of Agency, par. 266; 1 Mechem on Agency, secs. 784, 974; *Craighead v. Peterson,* 72 N. Y. 279, 28 Am. Rep. 150; *Batty v. Carswell,* 2 Johns. (N. Y.) 48, 49; *Mechanics' Bank v. Schaumburg,* 38 Mo. 228; *Harris v. John-*

*ston,* 54 Minn. 177, 40 Am. St. 312, 55 N. W. 970; 31 Cyc. 1383.)

Wyman & Wyman, for Respondents.

Where an officer of a corporation without authority undertakes to perform a corporate act, the other officers or directors must immediately on discovery repudiate the transaction and return the benefits or the corporation will be bound. (Thompson on Corporations, 2d ed., secs. 2019, 2020, 2044; *Currie v. Bowman,* 25 Or. 364, 35 Pac. 848.)

Where the bank retains the benefit of the contract, it is estopped to deny its validity. (*Bartlett Estate Co. v. Fraser,* 11 Cal. App. 373, 105 Pac. 130; *Ida County Sav. Bank v. Johnson,* 156 Iowa, 234, 136 N. W. 225; *German Nat. Bank v. Grinstead,* 21 Ky. Law Rep. 674, 52 S. W. 951; *First Nat. Bank v. Kimberlands,* 16 W. Va. 555; *Akers v. Ray County Savings Bank,* 63 Mo. App. 316; *Goldbeck v. Kensington Nat. Bank,* 147 Pa. St. 267, 23 Atl. 565; *Bank of New London v. Ketchum,* 64 Wis. 7, 24 N. W. 468; Thompson on Corporations, 2d ed., secs. 1960, 1964.)

No affidavit was filed by the plaintiff, and consequently the genuineness and due execution of the contract was deemed admitted by the plaintiff. (*Cox v. Northwestern Stage Co.,* 1 Ida. 376; *Martin v. Dowd,* 8 Ida. 453, 69 Pac. 276; *Sloan v. Diggins,* 49 Cal. 38; *Carpenter v. Shinners,* 108 Cal. 359, 41 Pac. 473; *Rianda v. Watsonville Water & Light Co.,* 152 Cal. 523, 93 Pac. 79; *Petersen v. Taylor,* 4 Cal. Unrep. 335, 34 Pac. 724; *Cordano v. Wright,* 159 Cal. 610, Ann. Cas. 1912C, 1044, 115 Pac. 227; *Knight v. Whitmore,* 125 Cal. 198, 57 Pac. 891; *Reynolds v. Pennsylvania Oil Co.,* 150 Cal. 629, 635, 89 Pac. 610.)

There was no legal objection to the bank's giving the security, even though Blackman had known that the bank was in failing circumstances at the time. (*Wilson v. Baker Clothing Co.,* 25 Ida. 378, 137 Pac. 896, 50 L. R. A., N. S., 239; *Capital Lumber Co. v. Saunders,* 26 Ida. 408, 143 Pac. 1178.)

BUDGE, C. J.—This is an action brought by Ben. Q. Pettengill, as receiver of the Boise State Bank, Limited, against William H. Blackman, Edward Payne as trustee, and Edward Payne, for the purpose of quieting title to lots Nos. 1, 2, 3, 4 and 5 of block No. 13, Riverside Addition to Boise City, Ada county. Herbert F. Lemp was also made a defendant, but plaintiffs dismissed as to him.

The case comes before us on appeal by the plaintiff from an adverse judgment entered by the district court of the third judicial district, in and for Ada county where the suit was brought. The complaint is in the usual form, setting out the manner in which plaintiff came to be receiver of the bank; fee-simple title to the property in question in the bank; and, "That the defendants claim an interest or estate in said premises adverse to the Boise State Bank, Limited, and to this plaintiff in his capacity as set forth in the title of this cause.

"That the claims of said defendants are without any right whatever, and that the said defendants have not any estate, right, title, or interest whatever in said land or premises or any part thereof."

The complaint contains a prayer that the defendants be required to set forth the nature of their claim; that all adverse claims of the defendants be determined by the decree of the court; that it be decreed that the defendants have no estate or interest whatever in or to said land or premises, and that the title of the bank is good and valid; that the respondents be enjoined and debarred from asserting any claim whatever in or to said land and premises adverse to the appellant or to the bank; and for such other relief as the court shall deem proper.

The answer denies that the bank is an owner in fee or otherwise of the lands in question, and denies "that the claims of these respondents are without any right whatever, and deny that these respondents have no estate, right, title or interest in said lands." And as an affirmative defense alleges that the respondent, Blackman, was the holder of a certificate of deposit of said bank, dated, Boise, Idaho, Nov. 10, 1910, due

six months after date; that the certificate had not been paid; that on or about the 3d day of November, 1911, Blackman informed the bank that he desired to cash the certificate; that the bank agreed with Blackman that in consideration of his not insisting upon immediate payment and of his extending the time until May 10, 1912, such certificate should bear interest at the rate of eight per cent per annum from and after Nov. 3, 1911; that the bank would cause said debt to be secured by a mortgage upon the lands in question; that pursuant to the agreement Blackman did not insist upon the payment of the certificate but did extend the time to May 10, 1912; that the bank made the following indorsement upon said certificate: "In consideration of security and extension of time of payment hereof until May 10, 1912, this certificate is to bear interest at the rate of eight per cent per annum from Nov. 3, 1911"; that Blackman performed all the conditions of said agreement upon his part to be performed; that in pursuance of the agreement, the bank, on or about Nov. 3, 1911, executed and delivered to defendant, Edward Payne as trustee, a deed conveying the property in question to said Payne in trust, "with the express understanding and upon the express condition that said Payne, as such trustee, would thereupon and immediately after receiving said deed, execute and deliver to said Blackman, his certain promissory note for $14,144.14, dated November 3, 1911, due on or before six months after the date thereof, bearing interest at the rate of eight per centum per annum. Which said note was to evidence the same debt, also evidenced by the certificate of deposit; and also that the said respondent, Payne, as such trustee, would immediately secure the payment of said note by mortgaging" the property in question; that on or about Nov. 3, 1911, the respondent, Payne, as said trustee, pursuant to said agreement executed and delivered to respondent, Blackman, his promissory note for $14,144.14, and at the same time executed and delivered to Blackman a mortgage upon the property in question; that Payne, as trustee, duly performed all the terms and conditions of said agreement on his part to be performed; that neither the note nor the debt evidenced thereby

has been paid; that Blackman is the holder and owner of the certificate of deposit and the note and the debt evidenced thereby, as well as the mortgage; that the respondent, Payne, claims no interest in the property except as trustee for the purpose set forth; and that respondent, Blackman, claims no interest except the lien of his mortgage.

Copies of the deed from the bank to Payne as trustee, of the note from Payne as trustee to Blackman, and of the mortgage from Payne as trustee to Blackman are attached to the answer as exhibits and included in the pleadings set forth in the answer by proper references.

The plaintiff did not file any affidavit denying the genuineness or due execution of either the deed, note or mortgage.

The record discloses the following facts: On October 25, 1911, the bank was insolvent; on the 25th, 26th and 27th of October, 1911, V. W. Platt, then bank commissioner of the state of Idaho, conducted an examination of the bank and told the officers of the bank, including Payne, who was then president, that the bank "was broke wide open." At that time Blackman was the holder of the certificate of deposit mentioned in the pleadings, which had been due since the previous May. It appears that Blackman had kept, for a time long prior to this examination of the bank, a large sum of money on deposit with the bank and had held the bank's certificate of deposit therefor; that these certificates had come due from time to time and had been renewed, each new certificate apparently including, not only the principal of the previous certificate, but also the accrued interest. Several of these renewals had taken place, the last one being the certificate of deposit which was outstanding at the time the bank was examined in October, 1911. After Payne had been advised by the bank commissioner that the bank "was broke wide open," he and his son, Eugene, the cashier of the bank, made a trip in the night-time in an automobile to Mountain Home, Idaho, to see Blackman, and being unable to see him left word for Blackman to come to Boise, that Payne wished to see him; Blackman came to Boise a day or so afterward and went to see Payne at his home, between 8 and 9 o'clock one morning,

and said that he wanted his money, and Payne told Blackman that it would cripple the bank, and asked him if it would be satisfactory if the bank would give him security.   On Nov. 3, 1911, the directors of the bank held a special meeting, at which all of the directors except one Pence, who had not been notified, were present; and a resolution was adopted that Payne be made trustee of the property in question, to execute a deed to Blackman to secure his certificate of deposit.

On the same day the bank deeded the property to Payne, trustee, and Payne, as trustee, gave the note and mortgage in question to Blackman.

In order to discuss the points involved in this case it will be necessary at the outset to give some consideration to the pleadings.   Respondent says in his brief:

"It might seem from appellant's brief that this action was brought by the receiver, Pettengill, to remove a definite cloud upon the title to certain realty claimed by the receiver.   Such, however, is not the case.   The action is the familiar one brought under the statute to quiet title."

Respondent is evidently proceeding upon the theory that the plaintiff, in order to secure the relief he is seeking, should have so drafted his complaint that it would have set forth the existence of the deed, note and mortgage in question; the reasons why they should be held void, and included in his prayer, a specific prayer that the instruments in question be canceled of record; and that inasmuch as appellant has not so drafted his complaint, he should not be granted the relief he is demanding.   Conceding that such would have been a proper way to proceed, still we are satisfied that the method selected by appellant is also a proper one and, so far as the pleadings are concerned, adequate for the desired end.   Suppose that the defendant had defaulted in this case and that plaintiff had gone ahead and secured a decree, not only quieting the title in him or in the bank, but also decreeing the further relief expressly prayed for, namely, that the defendant had no estate, right, title or interest in or to the property in question. It will not be seriously contended but that in that event defendant's interest would have been effectively eliminated.   In

order for the defendant to protect whatever rights he had in the property, it was necessary for him to appear in the action and pursue the identical course which the record shows he did pursue, namely, to set up affirmatively by way of defense the grounds upon which his interest, if any, was based. Except in so far as the affidavit under sec. 4201, Rev. Codes, may be considered a pleading, there is no provision under the code by which plaintiff was either required or permitted, to set up any affirmative matter by way of replication to the defendant's answer, but under sec. 4217, Rev. Codes, the plaintiff would be permitted to interpose any evidence which would tend to establish the matter relied upon affirmatively by the plaintiff, such as the failure of the instrument for want of consideration, or fraud, or other matters in avoidance thereof; except that in the particular case, having failed to file his affidavit, he could not interpose evidence attacking either the due execution or the genuineness of the instruments attached to defendant's answer.

It should be noted here that there is a distinction between the situation of a defendant who fails to plead matters relied upon as an affirmative defense on the one hand, and the situation of a plaintiff under the code, which has abolished the replication, when it comes to attacking affirmative matter, pleaded as new matter in the answer. In order for a defendant to take advantage of an affirmative defense, he must specifically allege it or his proof will not be admitted. (*Puritan Mfg. Co. v. Toti & Gradi,* 14 N. M. 425, 94 Pac. 1022.) But the plaintiff may take advantage of any affirmative matter which would tend to avoid the affirmative matter set forth in defendant's answer as fully as if he were permitted to specifically plead his matter defensive thereto. (*Cox v. Northwestern Stage Co.,* 1 Ida. 376; *Curtiss v. Sprague,* 49 Cal. 301; *Colton Land & W. Co. v. Raynor,* 57 Cal. 588; *Brooks v. Johnson,* 122 Cal. 569, 55 Pac. 423; *Myers v. Sierra Valley etc. Assn.,* 122 Cal. 669, 55 Pac. 689; *Moore v. Copp,* 119 Cal. 429, 51 Pac. 630; *Bradley v. Bush,* 11 Cal. App. 287, 104 Pac. 845.)

A bill to cancel an instrument which casts a cloud upon plaintiff's title may well be included in the statutory suit to

quiet title; a suit to quiet title is the larger and the inclusive term. Whereas a bill to cancel an instrument is only one specific instance of an equitable action for the removal of a cloud. (1 Bouvier Law Dict., Rawle's 3d ed., 364, and cases cited therein; 3 Daniel's Chancery Pleading and Practice, 6th Am. ed., p. 2040; *Carpenter v. Shinners*, 108 Cal. 359, 41 Pac. 473.)

In a suit to quiet title the plaintiff has a right to have determined every adverse interest, and anyone claiming to hold any interest in the property which would be adverse to plaintiff's interest may be required to come in and set up the nature of his interest and its source. It must be conceded that the interest of a mortgagee is an interest adverse to the holder of a legal title. The mortgagee is the holder of an equitable title and interest, and has a definite lien upon the mortgaged premises, and in the event of the failure or inability of the mortgagor, for any reason, to pay the debt secured by the mortgage, he would be subjected to a foreclosure suit, and his property would be subject to forced sale, and if sold, he would have nothing left except the right for a limited period to redeem. Certainly an interest which may be attended with consequences of such moment and which may operate to entirely defeat every interest of the holder of the legal title must be denominated an adverse interest. We are compelled to conclude, therefore, that the course pursued by appellant in this case is at least a proper one.

The defendant contends that, inasmuch as the plaintiff failed to file an affidavit denying the genuineness and due execution of the deed, note and mortgage, attached to defendant's amended answer, plaintiff had thereby admitted the "validity" of said instruments, or at least had waived any right to question their validity. This contention is based upon sec. 4201, Rev. Codes, which reads as follows:

"When the defense to an action is founded on a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk, within ten days after receiving a copy of the

answer, an affidavit denying the same, and serve a copy thereof on the defendant.''

The respondent in support of this view relies upon the following authorities: *Cox v. Northwestern Stage Co., supra; Martin v. Dowd,* 8 Ida. 453–456, 69 Pac. 276; *Sloan v. Diggins,* 49 Cal. 39; *Carpenter v. Shinners, supra; Rianda v. Watsonville Water etc. Co.,* 162 Cal. 523, 93 Pac. 79; *Petersen v. Taylor,* 4 Cal. Unrep. 335, 34 Pac. 724; *Cordano v. Wright,* 159 Cal. 610, Ann. Cas. 1912C, 1044, 115 Pac. 227; *Knight v. Whitmore,* 125 Cal. 198, 57 Pac. 891; *Moore v. Copp, supra; Reynolds v. Pennsylvania Oil Co.,* 150 Cal. 629, 89 Pac. 610; *Myers v. Sierra Valley etc. Assn., supra.* Without going into a discussion of these authorities, suffice it to say that they generally hold; that in the event of failure to file an affidavit denying the genuineness or due execution of instruments pleaded in this manner, the party so failing to file said affidavit is precluded from introducing evidence attacking either the genuineness or the due execution of said instruments.

On the other hand, appellant contends, and we think, correctly, that, notwithstanding he has waived his right to introduce evidence attacking the due execution or the genuineness of the instruments, this does not put him in the unfortunate position of admitting the ''validity'' of the instruments, and takes the position that he should be allowed to interpose any evidence tending to show that the instruments, notwithstanding their due execution and genuineness, are void, invalid and of no effect, as to the depositors of the bank.

As above indicated, we are persuaded from our examination of the authorities that this position of appellant's is the correct one. All of the cases cited by respondent can be reconciled to this view, whereas the cases cited by appellant, particularly *Myers v. Sierra Valley etc. Assn., supra, Cox v. Northwestern Stage Co., supra, Moore v. Copp, supra,* are tenable under no other theory. In *Cox v. Northwestern Stage Co., supra,* this court held that a failure by plaintiff to deny, by affidavit, the genuineness and due execution of an instrument in writing set forth in the answer as the foundation of the defense does not preclude the plaintiff from showing on the

trial that it was procured by fraud or misrepresentation. This question is closely allied with the question raised in the discussion in the pleadings, *supra*.

In *Curtiss v. Sprague, supra*, it was held that where a defendant set up a counterclaim, which was barred by the statute of limitations, plaintiff would be considered to have pleaded the statute by way of replication.

In *Colton Land & Water Co. v. Raynor, supra*, it was held that a plaintiff may introduce upon the trial evidence of any fact which contravenes or overthrows any new matter set up in the answer to the complaint.

In *Brooks v. Johnson, supra*, it was held that the failure of the plaintiff, in an action to foreclose a mortgage, to file an affidavit denying the genuineness and due execution thereof did not preclude proof by the plaintiff, on the finding by the court that the extension of time was without consideration.

In *Myers v. Sierra Valley etc. Assn., supra*, it was held that while failure to file an affidavit precluded plaintiff from interposing evidence contravening the genuineness and due execution of the note, that with this exception plaintiff could show any matters in confession or avoidance thereof.

The trial court in this case seems to have borne this distinction in mind when making the so-called "sticker ruling," in excluding portions of plaintiff's evidence, which was admitted at the trial with the understanding that the ruling thereon would be reversed; the trial court said:

"Upon final submission of the case the objection to the evidence offered is sustained in so far as the same attacks the genuineness or due execution of the written instrument upon which the defense to the action is founded, for the reason that the plaintiff did not file with the clerk of this court within ten days after receiving a copy of the answer, an affidavit denying the genuineness or due execution of said instrument, and serve a copy thereof on the defendant in accordance with the provisions of Idaho Revised Codes, section 4201; the objection as to the identification of said evidence is overruled and said evidence is admitted in so far as it is relevant or material to any other issue in the case."

The case of *Cox v. Northwestern Stage Co., supra,* appears
to be one of the leading cases upon the question of what is
meant by genuineness and due execution. The court in that
case used the following language:
. "The due execution of an instrument goes to the manner
and form of its execution according to the laws and customs
of the country, by a person competent to execute it. The gen-
uineness of an instrument evidently goes to the question of
its having been the act of the party just as represented, or,
in other words, that the signature is not spurious; and that
nothing has been added to it, or taken away from it, which
would lay the party changing the instrument, or signing the
name of the person, liable for forgery."

Respondent appears to be laboring under the erroneous im-
pression that the by-laws and the minutes of the directors'
meeting are not in evidence, and, therefore, ought not to be
considered by this court. That the contrary is true clearly
appears from the ruling of the trial court above quoted, where
the court says: " . . . . Said evidence is admitted in so far
as it is relevant or material to any other issue in the case."

Appellant seems to lay great stress upon the fact that the
bank was insolvent at the time the mortgage was given to
Blackman; he does not contend, however, that the bank would
not have authority to prefer a creditor even while insolvent.
And indeed it must be regarded as settled law in this state
that in the absence of collusion or fraud, an insolvent cor-
poration is not prohibited from preferring certain creditors
over others. This principle was announced in the case of
*Wilson v. Baker Clothing Co.,* 25 Ida. 378, 137 Pac. 896, 50
L. R. A., N. S., 239. And the rule there laid down by this
court was followed in the case of *Capital Lumber Co. v. Saun-
ders,* 26 Ida. 408, 143 Pac. 1178. The insolvency of the bank,
therefore, would only be material in the event that appellant
were able to show either collusion or fraud. But the trial
court found that Blackman had no knowledge of the insolvency
of the bank at the time of taking the mortgage, and this find-
ing is supported by the evidence. The trial court further
found, and it is not questioned by appellant, that the bank

was indebted to Blackman substantially in the amount for which the security was given. And we think the rule to be, that wherever there is a true debt and a real transfer for an adequate consideration, there is no collusion, and that fraud in its legal sense cannot be predicated on such a transaction. (Bump, Fraud. Conv., 2d ed., p. 187; *Currie v. Bowman,* 25 Or. 364, 35 Pac. 848–852.)

Appellant seeks further to attack the validity of this mortgage on the ground that the meeting of the board of directors, at which it was authorized, was not a lawful meeting, for the reason that notice was not given to all of the directors as required by the by-laws of the bank; and takes the position that any action of the board of directors under such circumstances would be void, and hence not binding upon the bank.

Respondent, however, contends that the action of the board of directors was ratified by the failure of the absent director to take any action by way of dissent after he was advised by Payne that the security had been given. He further contends that the bank received certain benefits from the transaction which it has not returned; that the bank has acquiesced in the giving of the security; that there was an agreement by the president to give the security upon the consideration that Blackman would extend the time of payment on the certificate of deposit; and that the bank is estopped from attacking the validity of the mortgage.

As to the question of ratification, the trial court found in substance that the action of the board of directors was ratified. The authorities upon the question of ratification are not altogether harmonious, and it would be a task altogether beyond the scope of this opinion to attempt to reconcile them. There is abundant authority, however, to the effect that under similar circumstances, the failure to dissent or to take any action looking toward the setting aside of the action of the board of directors under such circumstances, where knowledge of it has been at hand, amounts to a ratification of the action in question. (Cook on Corporations, 7th ed., secs. 808 and 809, and cases cited; Thompson on Corporations, 2d ed., secs. 2019–2044, and cases cited; *Central Trust Co. v. Ashville Land Co.,* 72 Fed. 361, 18 C. C. A. 590.)

We shall not attempt to discuss all the authorities so holding, but will refer to a few. Receiving and retaining the benefits of the transaction, although unauthorized or irregular, will amount to a ratification. (See the authorities cited *supra; Bank of New London v. Ketchum,* 64 Wis. 7, 24 N. W. 468; *Goldbeck v. Kensington Nat. Bank,* 147 Pa. St. 267, 23 Atl. 565; *Ida County Savings Bank v. Johnson,* 156 Iowa, 234, 136 N. W. 225; *Currie v. Bowman, supra; Vaught v. Ohio County Fair Co.,* 20 Ky. Law Rep. 1471, 49 S. W. 426; *Kelsey v. National Bank of Crawford County,* 69 Pa. St. 426; *Hooker v. Eagle Bank,* 30 N. Y. 83, 86 Am. Dec. 351; *Sherman v. Fitch,* 98 Mass. 59; *Lyndeborough Glass Co. v. Massachusetts Glass Co.,* 111 Mass. 315; *Manhattan Hardware Co. v. Phalen,* 128 Pa. St. 110, 18 Atl. 428; *Manhattan Hardware Co. v. Roland,* 128 Pa. St. 119, 18 Atl. 429; *Nevada Nickel Syndicate v. National Nickel Co.,* 96 Fed. 133.)

But appellant contends that the bank received no benefits, and that the mortgage to Blackman is in reality without any consideration. Under the facts in this case, however, such contention seems unwarranted in law. The extension of time within which to pay the old obligation is as much a consideration and as much an extension of credit as the granting of a new loan. In the case of *Auten v. City Electric St. R. Co.,* 104 Fed. 395, the court expressly so held.

In the last case cited the property was conveyed by an absolute deed to a grantee, who is designated in the deed as a "trustee"; the conveyance was in fact made to secure an indebtedness due a third party and such fact was admitted. The court held that the debtor could not invoke the statute of frauds to invalidate the deed or to defeat the trust thereby created on the ground that the deed failed to disclose the object of the trust or the beneficiary, but that the power, nature and purpose of the transaction could be shown by the creditor by parol, particularly in the absence of any objection by the grantee who held the legal title. In the same case it was also held that the fact that no formal action was taken by the directors of the company authorizing the conveyance would not defeat the equitable right to enforce the security, the company having received the entire benefit

thereof.   The questions of ratification, receiving and retaining benefits and estoppel are closely related, and the decisions have not always made it plain as to just which ground is decisive in any particular case.

It seems to be the well-recognized rule that where one without collusion or fraud deals with a corporation through an officer who is in the active management of the business, if the act done by said officer of the corporation is one which the corporation might do, the corporation will be estopped from relying upon any lack of authority in said officer as a defense against the rights of the party so dealing with the corporation.   (*Sherman v. Fitch, supra; Indianapolis Rolling Mill Co. v. St. Louis etc. R. Co.,* 120 U. S. 256, 7 Sup. Ct. 542, 30 L. ed. 639; *First Nat. Bank of Wellsburg v. Kimberlands,* 16 W. Va. 555; *Gribble v. Columbus Brewing Co.,* 100 Cal. 67, 34 Pac. 527; *Akers v. Ray County Savings Bank,* 63 Mo. App. 316; *German Nat. Bank v. Grinstead,* 21 Ky. Law Rep. 674, 52 S. W. 951; *Bartlett Estate Co. v. Fraser,* 11 Cal. App. 373, 105 Pac. 130.)   In the latter case it was held that the president of a bank, being its executive head under the usages and customs of modern banking, the rule that his power is limited to transactions expressly authorized by the directors no longer obtains.

In 3 Cook on Corporations, 7th ed., sec. 716, the rule is laid down as follows: "So also a company is bound when it ratifies or accepts a contract after it is made, or accepts the benefits of the contract.   Having knowingly received the benefits of a contract made and carried out by the president, even without authority, the corporation must perform on its part."

And many cases are cited approving the doctrine.   One of the cases there cited sums up the rule, saying of the board: "They may previously resolve; they may subsequently acquiesce; they may expressly ratify; they may intentionally receive and appropriate the proceeds of the unauthorized transaction and so put it out of their power to dispute its validity." (*Curtis v. Leavitt,* 15 N. Y. 9–49.)

The rule is further announced by the same author, sec. 725, p. 2569: "A mortgagee is not bound to inquire into the ob-

servance of the rules and regulations of the company relative to the call of meetings.''

This principle of law was applied in *Louisville. N. A. & C. R. Co. v. Louisville Trust Co.*, 174 U. S. 552, 19 Sup. Ct. 817, 43 L. ed. 1081. The opinion quotes as authority from the case of *Merchants' Bank v. State Bank,* 10 Wall. (77 U. S.) 604, 19 L. ed. 1008, the following proposition, which is designated as an axiomatic principle in the law of corporations:

''Where a party deals with a corporation in good faith . . . . and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them.''

The court, after reviewing a number of the leading English and American authorities, further said, that the records of the board of directors were private records, ''which a purchaser of the bonds was not obliged to inspect as he would have been if the fact had been required by law to be entered upon a public record.''

The trial court found that the legal title of the property in question was in the bank. This is clearly wrong, but is probably an oversight, inasmuch as the point does not seem to have been regarded as material by either appellant or respondent. It must be conceded, however, that the legal title to this property is in Payne, as trustee.

If for any reason the circumstances require the appointment of a new trustee, the trial court has ample jurisdiction to give it effect.

The case is remanded to the district court, with instructions to modify its findings and decree in accordance with the views herein expressed. Costs awarded to respondent.

MORGAN, J., Concurring.—I concur in the conclusion reached that the judgment of the trial court should be affirmed, and base my concurrence upon the failure of appellant to deny,

as required by sec. 4201, Rev. Codes, the genuineness and due execution of the deed, upon which the defense was founded and which was annexed to and made a part of the answer.

RICE, J., Concurring.—I concur in the opinion of Mr. Justice Morgan that the failure of the plaintiff to deny the genuineness and due execution of the deed and mortgage in question is an admission of the authority for their execution, and precludes appellant from urging the illegality of the meeting of the board of directors or limitations upon the authority of Payne as trustee.

I concur in the opinion of Chief Justice Budge that even if the authority for the execution of the deed and mortgage were lacking in the first instance, the plaintiff is estopped from questioning the authority, for the reason that it cannot be held that respondent Blackman did not forego substantial rights by the acceptance of the note and mortgage.